864 F.2d 721
 7 UCC Rep.Serv.2d 1363
 LANDSMAN PACKING CO., INC., A New Jersey Corporation,
Plaintiff-Appellee, (Out 4/20/88),
v.
CONTINENTAL CAN COMPANY, INC., A Delaware Corporation,
Defendant-Appellant, American Motorists Insurance
Company, et al., Defendants.
 No. 87-5998.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 30, 1989.
 
 1
 Hugh J. Turner, Jr., Miami, Fla., Eugene L. Stewart, Washington, D.C., for Continental Can Co., Inc.
 
 
 2
 Peter Kneski, Arthur J. England, Jr., Miami, Fla., for Landsman Packing Co., Inc.
 
 
 3
 Appeal from the United States District Court for the Southern District of Florida.
 
 
 4
 Before KRAVITCH and EDMONDSON, Circuit Judges, and HOFFMAN*, Senior District Judge
 
 WALTER E. HOFFMAN, Senior District Judge:
 
 5
 Landsman Packing Company ("Landsman") filed suit against Continental Can Company ("Continental") in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, alleging breach of contract regarding Landsman's leasing of a capping machine from Continental. Continental counterclaimed for rents due on the capping machine, costs of machine parts unpaid by Landsman, and to regain possession of a loaned capping machine allegedly converted by Landsman. Continental removed the case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. Secs. 1332 and 1441. The district court granted Continental's motion for summary judgment on its counterclaim for machine rent and cost of parts in the amount of $26,672.20.
 
 
 6
 The case proceeded to a jury trial on Landsman's breach of contract claim and Continental's counterclaim of conversion. The jury decided against Continental on the conversion claim and ruled in favor of Landsman on its breach of contract claim, awarding $500,490 in direct damages and $5,332,500 in consequential damages. The district court denied Continental's post-trial motions for judgment n.o.v. and new trial, but granted a motion for remittitur and reduced direct damages from $500,490 to $8,710. Continental appeals the judgment following the jury's award of direct and consequential damages, and the jury's finding of no conversion.
 
 
 7
 Because the trial judge improperly instructed the jury on the breach of contract issue, we vacate the jury's award of damages and remand the case to the district court for a new trial. The jury's verdict on the conversion claim is also vacated as against the clear weight of the evidence, and the issue is remanded for a determination of damages.
 
 I.
 
 8
 In 1969 Landsman contracted to lease a capping machine from Continental for the purpose of placing caps on jars of fruit processed by Landsman. The machine was shipped to Landsman in 1972 and ran satisfactorily until May 1981. On June 11, 1981, the parties renewed the 1969 contract and executed a new lease agreement that contained essentially the same terms as the 1969 agreement and provided for automatic annual renewals.[1] At all times under the lease, Landsman was using the capping machine originally shipped in 1972.
 
 
 9
 In May 1981, the machine allegedly began misapplying caps, resulting in a faulty seal, which caused the fruit contents to spoil. Landsman contacted Continental and they sent servicemen to repair the machine. Despite Continental's repair efforts, the machine continued to malfunction, and on October 30, 1981, Landsman's plant manager gave its first written notice to Continental regarding Continental's failure to repair the machine. The capping problem continued to recur through December 1982, at which time Continental loaned Landsman a new machine to determine if that would cure the problem.[2] Although the new machine worked properly, Landsman was forced to close its plant in April 1983, allegedly because of loss of customers and sales due to the malfunctioning machine. New York law controls the issues in this case pursuant to paragraph 13 of the lease agreement.[3]
 
 II.
 
 10
 On appeal, Continental asserts several grounds for reversal of the jury's findings below. We will categorize and review these issues in three groups. The first issue we will address is whether Landsman's claims are barred by the expiration of specific time limitations in the lease, such as the 12 month limited warranty, and the 30 day written notice of claim requirement. See supra note 1 (quoting paragraphs 9(a) and (b) of lease). Second we will comment on the trial judge's admission of certain expert testimony. The final issue calls for a review of whether the jury's finding that Landsman did not convert the loaned capping machine was against the clear weight of the evidence.
 
 III.
 A. The 12 Month Warranty
 
 11
 At trial Landsman alleged that Continental breached two provisions of the lease agreement: first, paragraph 4 of the lease, which requires Continental to furnish repair parts and machine service;[4] and, second, paragraph 9(b), which provides for a warranty against faulty workmanship and defective materials extending twelve months from the date of original shipment of the machine or its replacement parts. See supra note 1. Landsman further claimed that the exclusive remedy of repair or replacement provided in paragraph 9(c) failed of its essential purpose. Id.
 
 
 12
 Apparently, at trial Landsman focused its claim on Continental's alleged breach of the 12 month warranty. By its terms, the warranty coverage for the machine was limited to 12 months from the date of original shipment, which was in 1972. The warranty also covered any replaced parts for 12 months from the date of shipment of the particular part. Id. Regarding Landsman's breach of warranty claim, the trial judge instructed the jury that the time limitations set forth in the lease may be disregarded if so unreasonable that they amount to eliminating all remedy under the contract and charged the jury with the following special interrogatory:
 
 
 13
 Do you find that the part or parts were not defective within 12 months from the date of shipment to Plaintiff [Landsman] and that such time limitation was reasonable?
 
 
 14
 Continental argues on appeal that the special interrogatory is erroneous for two reasons. First, Continental contends that the last clause of the interrogatory, stating as follows: "and that such time limitation was reasonable," makes the interrogatory erroneous because in form it is an impermissible compound question. Second, Continental argues that the jury should not have been permitted to determine the reasonableness of the 12 month warranty. Before we address the merits of this claim, we must first determine whether Continental properly preserved this issue for appeal. Although Continental objected to the interrogatory during a precharge conference held in judicial chambers, it failed to object at the critical moment the jury was charged with the interrogatory.
 
 
 15
 Rule 51 of the Federal Rules of Civil Procedure requires that an objection to jury instructions be stated distinctly after the charge and before the jury retires. Lang v. Texas & Pacific Railway Co., 624 F.2d 1275, 1279 (5th Cir.1980).[5] The purpose of Rule 51 is to ensure that the trial judge is made aware of any alleged errors, and to give the judge an opportunity to correct any error before the jury begins its deliberations. Pate v. Seaboard Railroad, Inc., 819 F.2d 1074, 1082 (11th Cir.1987); Lang, 624 F.2d at 1279; Williams v. Hoyt, 556 F.2d 1336, 1340 (5th Cir.1977), cert. denied, 435 U.S. 946, 98 S.Ct. 1530, 55 L.Ed.2d 544 (1978); Independent Development Board v. Fuqua Industries, Inc., 523 F.2d 1226, 1237-38 (5th Cir.1975). Additionally, Rule 51 must be read in conjunction with Rule 46, which essentially states that formal exceptions to court rulings or orders are unnecessary provided the party makes his objections known to the court.[6] See Fuqua Industries, 523 F.2d at 1238 n. 11.
 
 
 16
 This Circuit has recognized two narrow exceptions where a party's failure to properly object will be disregarded: 1) where the party's position has been made clear previously to the court and it is plain that further objection would have been unavailing; and, 2) where it is necessary to correct a fundamental error or prevent a miscarriage of justice. Pate, 819 F.2d at 1082; Lang, 624 F.2d at 1279; Williams, 556 F.2d at 1340; Fuqua Industries, 523 F.2d at 1238. The first exception is pertinent to this case.
 
 
 17
 Continental's first claim of error, regarding the form of the interrogatory, can be dispensed with easily. See supra (quoting alleged objectionable interrogatory). As a general rule, an interrogatory constitutes reversible error if it is ambiguous or if one of the issues is improperly submitted to the jury. Dougherty v. Continental Oil Co., 579 F.2d 954, 960 n. 2 (5th Cir.1978), vacated by joint stipulation, 591 F.2d 1206 (5th Cir.1979). A party who fails to object during trial to the form of an interrogatory, however, cannot raise the objection for the first time on appeal. Charles Stores, Inc. v. Aetna Insurance Co., 490 F.2d 64, 67-68 (5th Cir.1974); Nimnicht v. Dick Evans, Inc., 477 F.2d 133, 134 (5th Cir.1973); see also 5A J. Moore & J. Lucas, Moore's Federal Practice 49.03 (2d ed. 1988). Although Continental objected to a jury determination of reasonableness during the precharge conference, there was no objection to the form of the interrogatory either at the precharge conference or at the charging of the jury. On the contrary, the record indicates that during the precharge conference, Continental expressly requested the form of the interrogatory to which it now objects.[7] Counsel for Continental stated the following:
 
 
 18
 Without waiving our objection, Your Honor, I would make a suggestion after the word "defective" in Paragraph 2, you could state "and whether such time limitation was reasonable."
 
 
 19
 Continental failed to preserve for appeal any issue regarding the form of the interrogatory and will not be permitted to claim error in the form of an interrogatory that it requested.
 
 
 20
 Continental's second objection claims the interrogatory erroneously provided for a jury determination of whether the warranty's 12 month time limitation was reasonable. Although Continental failed to formally object to the special interrogatory at the charging of the jury, Continental did raise objections during the precharge conference held in judicial chambers. Counsel for Continental and Landsman both explained to the trial judge their respective positions on this reasonableness issue.[8] Continental specified its rationale in support of its objections, indicated that it would not abdicate its position, and expressly reserved its objections when it made a suggestion as to how the jury interrogatory should be worded if the trial judge insisted on including the reasonableness issue.
 
 
 21
 Accordingly, because the trial judge was made sufficiently aware of Continental's objections and that further objections apparently would have been unavailing, we find that Continental falls within the first exception to the formal objection rule and is deemed to have preserved this issue for appeal. Therefore, we will review the merits of Continental's claim that the issue of the reasonableness of the 12 month time limitation was improperly put to the jury.
 
 
 22
 The trial judge's decision to include a reasonableness determination in the jury interrogatory apparently was based on Landsman's argument that the 12 month warranty fell within the purview of Sec. 1-204 Comment of the New York Uniform Commercial Code ("N.Y.U.C.C.").[9] Comment of that section provides the following:
 
 
 23
 Subsection (1) recognizes that nothing is stronger evidence of a reasonable time than the fixing of such time by fair agreement between the parties. However, provision is made for disregarding a clause which whether by inadvertence or overreaching fixes a time so unreasonable that it amounts to eliminating all remedy under the contract....
 
 
 24
 We find that the trial judge erred in submitting this issue to the jury for the following two reasons.
 
 
 25
 First, Sec. 1-204 Comment is not applicable to the warranty provision. Comment applies to time limitations that "eliminat[e] all remedy under the contract." The 12 month warranty does not eliminate all remedy under the contract. The 12 month time period merely limits the duration of the warranty, not the time within which Landsman may recover for breach of contract.[10] New York courts, as well as others, have upheld 12 month warranty limitations as reasonable. Broe v. Oneonta Sales Co., 100 Misc.2d 1099, 420 N.Y.S.2d 436, 437 (N.Y.Sup.Ct.Special Term 1978); Unsinn v. Republique Francaise, 281 App.Div. 738, 117 N.Y.S.2d 801, 802-03 (1953) (Van Voorhis, J., dissenting); Abraham v. Volkswagen of America, Inc., 795 F.2d 238, 250 (2d Cir.1986).[11] These courts have also held that the court--not the jury--should make the determination of whether designated warranty periods are "reasonable" or "unconscionable." Broe, 420 N.Y.S.2d at 437 (citing Wilson Trading Corp. v. Ferguson, Ltd., 23 N.Y.2d 398, 297 N.Y.S.2d 108, 111 & n. 1, 244 N.E.2d 685, 687-88 & n. 1 (1968) (the latter case being an opinion from New York's highest court)).
 
 
 26
 The warranty on the capping machine began to run in 1972, the date of shipment, and expired in 1973.[12] This is so even though Landsman and Continental executed a new lease agreement in 1981. The new lease did not purport to cover a "new machine"; rather, the warranty provision in the 1981 lease expressly stated that it commenced from the date of the original shipment of the machine, not the execution of the lease. Id. Otherwise, it could be argued that the warranty would renew with each successive annual renewal of the lease, which would create a warranty with no time limit at all. This would be an unreasonable burden to impose on Continental, as the lessor, and clearly was not intended by the parties.[13]
 
 
 27
 Second, Landsman itself demonstrates that expiration of the warranty did not eliminate all remedy under the contract. Landsman argues two theories of breach of contract: breach of the warranty, and Continental's breach of its obligation to provide machine service and repair under paragraph 4 of the lease. See supra note 1 (quoting paragraph 4 of the lease). Continental had a duty to repair and service the machine irrespective of the warranty. Because there are two theories under which Landsman sues for breach of contract, it cannot be said that expiration of the warranty eliminates all remedy under the contract.
 
 
 28
 We find, therefore, that it was reversible error for the trial judge to allow the jury to determine the reasonableness of the 12 month warranty limitation. Under the facts of this case, the jury should not have been permitted to extend the warranty beyond the agreed-upon 12 months.
 
 B. 30 Day Notice Provision
 
 29
 Continental also argued that Landsman's claim should be barred because Landsman failed to comply with the lease provision which states that all claims are waived unless written notice of the claim is given within 30 days of discovery of the basis for the claim. See supra note 1 (quoting paragraph 9(a) of the lease). The trial judge submitted to the jury the following special interrogatory which asked the jury to determine the reasonableness of this time limitation:
 
 
 30
 Do you find that Plaintiff [Landsman] failed to make a claim in writing within 30 days from the date [Landsman] learned that the part or parts were defective and that such time limitation was reasonable?
 
 
 31
 Similar to its objections regarding the 12 month warranty, Continental claims the jury interrogatory is erroneous because it is compound in form, and because it improperly allows the jury to determine the reasonableness of the time limitation. Again, there is a threshold issue as to whether these issues were preserved for appeal. In accordance with our reasoning concerning the 12 month warranty, we find that Continental cannot claim error with regard to the form of the interrogatory because it requested that form and failed to state any objection as to form. With regard to the reasonableness issue, however, we find that Continental did preserve this issue for appeal. Although Continental did not formally object to the interrogatory at the charging of the jury, it did raise sufficient objections at the precharge conference.[14] The reasonableness issue, therefore, was preserved for appeal and merits our review. See also supra (explaining exception to formal objection rule).
 
 
 32
 Our review of the 30 day notice provision is distinguishable from the 12 month warranty with regard to the issue of the reasonableness of the time limitation. Because N.Y.U.C.C. Sec. 1-204 Comment generally is not applicable to warranties, a jury determination of the reasonableness of a warranty time limitation is inappropriate. See supra. Unlike the 12 month warranty, however, the 30 day notice clause does fall within the purview of N.Y.U.C.C. Sec. 1-204 Comment . Comment applies to the 30 day notice provision because that provision does operate to "eliminat[e] all remedy under the contract." The contract specifically states that all claims are waived unless Continental receives written notice of the claim within 30 days after Landsman discovers the basis for such claim. See supra note 1 (quoting paragraph 9(a) of lease). The reasonableness of the 30 day limitation, therefore, was properly drawn into question.
 
 
 33
 Under New York Law, issues of reasonableness pertaining to Sec. 1-204 have generally been held to present questions of fact for the jury. Sherkate Sahami Khass Rapol v. Henry R. Jahan & Son, Inc., 701 F.2d 1049, 1051 (2d Cir.1983); see also Wilson Trading Corp., 297 N.Y.S.2d at 111, 244 N.E.2d at 687 (relating to latent defects). Furthermore, New York courts have stated that unreasonably short time limitations which preclude all claims may be held invalid. See Weisz v. Parke-Bernet Galleries, Inc., 67 Misc.2d 1077, 325 N.Y.S.2d 576, 582-83 (N.Y.Civ.Ct.1971), 10 U.C.C.Rep.Serv. 292, 293 (finding 10 day limitation period unreasonable because claim could not realistically be known within 10 days), rev'd on other grounds, 77 Misc.2d 80, 351 N.Y.S.2d 911 (N.Y.App.Term 1974); Jessel v. Lockwood Textile Corp., 276 App.Div. 378, 95 N.Y.S.2d 77 (1950) (holding that time limitation precluding claims must comply with rules of reasonableness).[15]
 
 
 34
 The trial judge did not commit reversible error, therefore, in allowing the jury to determine whether the 30 day time period was a reasonable limitation because this limitation operated to eliminate all remedy under the contract.
 
 
 35
 Regardless, it does not seem that the reasonableness of the 30 day limitation deserves much scrutiny. This provision was triggered by the discovery of a "basis for a claim." Because Continental had a contractual obligation to service and repair the machine, arguably no "basis for a claim" would exist until after it became evident that Continental could not or would not repair the machine. See Rochester Welding Supply Corp. v. Burroughs, 78 A.D.2d 983, 433 N.Y.S.2d 888, 889 (1980). Under the facts of this case, Landsman first became aware of a machine malfunction and gave nonwritten notice to Continental in May 1981. Continental sent repairmen to cure the malfunction and assured Landsman that the machine would operate properly. This scenario replayed itself several times and on October 30, 1981, Landsman gave its first written notice questioning Continental's ability to repair the machine.
 
 
 36
 Landsman cannot be said to have "discovered the basis for a claim" during the time Continental was attempting to repair the machine and repeatedly assuring Landsman that any problems were cured. Id.; cf. Anderson v. Farmers Hybrid Co., Inc., 87 Ill.App.3d 493, 42 Ill.Dec. 485, 488, 408 N.E.2d 1194, 1197 (1980) (finding that contract provision requiring written notice of claim within 30 days of delivery could be waived by seller's conduct in responding to buyer's oral complaint that was made within 30 day period). The written notice on October 30, 1981, therefore, arguably complied with the 30 day notice provision.[16]
 
 IV.
 
 37
 Continental raised several other issues that we need not address in light of our granting a new trial. However, in the interest of providing guidance on retrial, we will comment on the trial judge's admission of certain testimony by Landsman's financial expert.
 
 
 38
 During trial a dispute arose regarding the admissibility of the testimony of Landsman's financial expert. The expert's testimony concerned the economic damages suffered by Landsman resulting from the closing of its fruit processing plant. The expert calculated what Landsman's profits would have been through 1987 had Landsman not gone out of business in 1983.
 
 
 39
 Apparently the financial statements of Landsman were combined with another commonly owned company called Spring Lake Cold Storage ("Spring Lake"), which was not a party to the case. The trial judge properly excluded these combined financial statements from evidence, but he permitted the financial expert to testify despite the expert's reliance on an analysis of the combined financial records. The expert stated that it was common for small, commonly owned businesses to combine their financial statements and that there was not a "significant difference" in his calculations as to Landsman standing alone or with Spring Lake. The trial judge denied Continental's motion to strike the testimony because the expert "explained that there [was] no affect."
 
 
 40
 Because the case is going to be retried, we need not determine the admissibility of this testimony. We assume, however, that when this case is retried, Landsman will segregate its financial records and have the expert make a more accurate analysis of Landsman's financial condition standing alone.
 
 V.
 
 41
 The final issue we will address is whether Landsman converted the capping machine which Continental loaned to Landsman in December 1982. The jury found that Landsman did not convert the loaned capping machine, and the trial judge denied Continental's motion for a judgment n.o.v.
 
 
 42
 The standard for ruling on a motion for judgment n.o.v. is the same as that for a directed verdict. Michigan Abrasive Co. v. Poole, 805 F.2d 1001, 1004 (11th Cir.1986) (citing Neff v. Kehoe, 708 F.2d 639, 641-42 (11th Cir.1983) and Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir.1969)). Specifically, the court should consider all the evidence in a light most favorable to the nonmovant and grant a judgment n.o.v. only if the facts and inferences point overwhelmingly in favor of the movant such that there can be but one reasonable conclusion. Poole, 805 F.2d at 1004; see also Fairley v. American Hoist & Derrick Co., 640 F.2d 679, 681 (5th Cir.Unit A Mar.1981). On appeal, a reviewing court should apply the same standard because the same substantive issues presented to the lower court must be addressed on appeal. Poole, 805 F.2d at 1004; Neff, 708 F.2d at 641.
 
 
 43
 We find that the trial judge erred in not granting the judgment n.o.v. Based on the facts and inferences surrounding the conversion issue, the only reasonable conclusion that the jury should have reached is that Landsman did convert the capping machine.
 
 
 44
 The conversion claim arose because after Landsman closed its processing plant, it retained the capping machine originally leased and the capping machine that Continental provided as a loaner in December 1982. Apparently, Landsman was holding the machines as evidence for this suit. The loaned machine is the subject of Continental's conversion claim.
 
 
 45
 Landsman had possession of the loaned machine pursuant to an agreement authorizing Landsman to use the machine rent-free for three months.[17] After Landsman closed its processing plant, it ceased paying rent for the leased machine and never commenced paying rent for the loaned machine. Although Landsman was to pay rent for the loaned machine after the three-month period, Continental did not issue a rental invoice until 1986.[18] Nevertheless, in 1983 Continental twice made demands by letter for return of the machines.[19] Landsman refused to return the machines. Consequently, Continental has counterclaimed alleging that Landsman's refusal to return the loaned machine constitutes conversion.
 
 
 46
 At trial Continental established that Landsman had possession of the machine, that Continental had demanded its return, and that Landsman refused to return the machine. Landsman contends that it did not convert the machine because it did not "intend" to deprive Continental of the machine. In support of its argument Landsman quoted Wabco Trade Co. v. S.S. Inger Skou, 482 F.Supp. 444 (S.D.N.Y.1979), which states the following: "[in a conversion action the defendant must have] an intent to exercise dominion or control over the property in a manner inconsistent with the rights of another." Id. at 448 (quoting United States v. Morrison, 536 F.2d 286, 289 (9th Cir.1976)).
 
 
 47
 We disagree with Landsman's argument that lack of an intent to deprive another of property vitiates a conversion claim. The court in Wabco Trade Co. states that an action for conversion requires only an intent to exercise dominion or control over the property, not an intent to deprive one of property permanently. See also Employer's Fire Ins. Co. v. Cotten, 245 N.Y. 102, 156 N.E. 629, 630 (1927); Bradley v. Roe, 282 N.Y. 525, 27 N.E.2d 35, 38-39 (1940). The trial judge's instructions to the jury were consistent with this interpretation of the law.[20]
 
 
 48
 Landsman intended to "exercise dominion and control" over the machine for the purpose of gathering evidence. Mr. Samuel Landsman, President of Landsman Packing Company, testified in three instances that he refused to return the machines because he felt he needed them for his suit against Continental.[21] Landsman's evidentiary investigations, however, do not justify keeping property from its rightful owner.[22] When Landsman refused to return the machine after Continental's demands, its possession became inconsistent with the rights of Continental as the owner. Where the possessor of property rightfully obtains possession but wrongfully retains it, a cause of action for conversion arises when the owner makes a demand for return of the property and the possessor refuses. See Cotten, 156 N.E. at 630; 18 Am.Jur.2d Conversion Sec. 47 (1980). In other words, the occurrence of a demand and refusal constitutes prima facie evidence of conversion. Pierpoint v. Hoyt, 260 N.Y. 26, 182 N.E. 235, 236 (N.Y.1932); Ball v. Liney, 48 N.Y. 6, 12 (N.Y.1871); McEntee v. New Jersey Steamboat Co., 45 N.Y. 34, 37 (1871).[23]
 
 
 49
 Landsman's contention that it did not intend to "deprive" Continental of the machine permanently does not rebut the conversion charge. Landsman intended to prevent and succeeded in preventing Continental from regaining rightful possession of the machine. Landsman presented no additional evidence to rebut the prima facie case established by Continental.[24] Thus, based on the facts and inferences viewed in a light most favorable to Landsman, the only reasonable conclusion the jury could reach is that Landsman converted the capping machine.
 
 
 50
 The general measure of damages for conversion is that the owner of the property may recover its fair and reasonable market value at the time of the conversion plus interest. Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317, 425 N.Y.S.2d 783, 786, 402 N.E.2d 122, 125 (1980); Wm. H. Wise & Co. v. Rand McNally & Co., 195 F.Supp. 621, 629 (S.D.N.Y.1961) (citing Bankers Commercial Corp. v. Mittleman, 21 Misc.2d 1096, 198 N.Y.S.2d 184, 186 (N.Y.Sup.Ct.1960). We assume that Landsman continues to hold the capping machine.[25] Thus, Continental's election for a cause of action in conversion will have the effect of a sale and transfers title to the property to Landsman upon satisfaction of the judgment. Pierpoint, 182 N.E. at 236; Terry v. Munger, 121 N.Y. 61, 24 N.E. 272, 272 (1890).
 
 VI.
 
 51
 We therefore vacate the jury's award of damages on Landsman's breach of contract claim because the jury was improperly instructed on the breach of warranty issue, and we vacate the jury's verdict on Continental's counterclaim of conversion as against the clear weight of the evidence. The case is remanded for a new trial on the breach of contract claim and for a determination of damages on the conversion claim.
 
 
 52
 VACATED AND REMANDED.
 
 
 
 *
 The Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 The lease agreement contained the following relevant provisions:
 Paragraph 3:
 Lessee [Landsman] shall ... (c) keep the equipment at Lessee's expense at all times in first class operating condition and repair; ... (e) return promptly to Lessor [Continental] upon expiration or sooner termination of this Agreement the equipment in first class operating condition and repair, excepting wear and tear from careful and prudent use....
 Paragraph 4:
 Lessor shall, on reasonable notice by Lessee, furnish repair parts and machine service at its prevailing uniform prices and rates....
 Paragraph 9:
 (a) Lessee waives all claims relating to the equipment unless received in writing by Lessor within thirty (30) days after Lessee discovers the basis for such claim....
 (b) EXCEPT AS EXPRESSLY CONTAINED IN THIS PARAGRAPH 9(b), LESSOR MAKES NO WARRANTY, EXPRESS, IMPLIED, OR STATUTORY, REGARDING THE EQUIPMENT EXCEPT THAT LESSOR WARRANTS UNDER NORMAL USE AND SERVICE, EACH PART OF NEW OR RECONDITIONED EQUIPMENT OF LESSOR'S OWN MANUFACTURE AGAINST FAULTY WORKMANSHIP AND DEFECTIVE MATERIALS, BUT NOT AGAINST NORMAL WEAR AND TEAR, FOR A PERIOD OF TWELVE (12) MONTHS FROM THE DATE OF ORIGINAL SHIPMENT TO LESSEE.
 (c) LESSEE'S EXCLUSIVE REMEDY AND LESSOR'S SOLE LIABILITY ON ANY CLAIM WHETHER TORT, CONTRACT OR WARRANTY SHALL BE LIMITED TO LESSOR REPAIRING OR REPLACING, AT ITS OPTION, ANY DEFECTIVE PART OF NEW OR RECONDITIONED EQUIPMENT OF LESSOR'S OWN MANUFACTURE AND IN NO EVENT SHALL LESSOR BE LIABLE FOR DIRECT OR INDIRECT DAMAGES OF ANY KIND AND, SPECIFICALLY BUT NOT IN LIMITATION THEREOF, LESSOR SHALL NOT BE LIABLE FOR INJURY TO ... PROPERTY (INCLUDING LOSSES RESULTING FROM LINE DOWN TIME OR PRODUCT WASTE) OCCASIONED BY OR GROWING OUT OF INSTALLATION, REMOVAL OR USE OF THE EQUIPMENT OR FOR FAULTY CAP APPLICATION OR SEALING FAILURE.
 * * *
 (e) Neither party may bring any action under or arising from this Agreement unless such action is commenced within two (2) years after the cause of action has accrued.
 
 
 [2]
 The loaned machine was not subject to a lease agreement nor was it intended to fall within the terms of the existing lease
 
 
 [3]
 Paragraph 13 of the lease provides the following: "This Agreement and any question concerning its validity, construction or performance shall be governed by the laws of the State of New York."
 
 
 [4]
 Continental claims that according to paragraph 3, subparts (c) and (e) of the lease, see supra note 1, Landsman, not Continental, was required to repair and maintain the machine. We disagree. Paragraph 4 unambiguously obligates Continental to provide machine service and repair. Id. Paragraph 3, subparts (c) and (e), on the other hand, merely require that Landsman maintain the machine in good operating condition
 
 
 [5]
 In pertinent part, Rule 51 provides as follows:
 No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection....
 Lang is controlling precedent because all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, are binding precedent upon the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).
 
 
 [6]
 Fed.R.Civ.P. 46 provides in pertinent part the following:
 Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which the party desires the court take or the party's objection to the action of the court and the grounds therefor....
 
 
 [7]
 The language used in the interrogatory addressing the 12 month warranty was actually requested by Continental while it was discussing the 30 day notice provision. However, the reasonableness issue was discussed interchangeably with both time limitations and applied equally to each. Thus, Continental's requested language was placed at the end of both the 30 day and 12 month time limitation interrogatories
 
 
 [8]
 The pertinent discussion held in the precharge conference is as follows:
 MR. KNESKI [Counsel for Landsman]: He has got in here a statement that in order for Landsman to show that a limited warranty failed in its essential purpose, you must prove by a preponderance of the evidence that the capping machine did not operate due to parts which were defective twelve months within the date of shipment of those parts. I don't think that's a reasonable limitation--there is some case law to that effect--in light of the fact that Landsman might not have discovered until after the year had gone by that the part was defective. If that happened, Landsman would be left without any remedy at all.
 THE COURT: It seems to me that there probably should be some sort of reasonable theory on how to discover things. I think about the one part with the pulley, or whatever it was, that ultimately one of your last witnesses explained to me that they had sort of after a long period of time came in and felt a certain thing was causing the problem....
 MR. TURNER [Counsel for Continental]: A twelve-month parts warranty is a twelve-month parts warranty. It is not a twenty-four-month parts warranty.
 THE COURT: It seems to me if you buy something--say, you buy a car. You get a twelve-month parts warranty. You keep taking it back to General Motors, and as usual, General Motors says you cannot drive. When they drive it privately, it works fine. You cannot pinpoint that part at the time. It seems to me that it may well have failed within the twelve-month period and you just are unable to identify that specific part as a failure because the repairman won't tell you it is a failure.
 * * *
 MR. TURNER: I don't think it is a question for the jury to decide what is reasonable.
 MR. KNESKI: Judge, I think it is. I have the Code which is adopted in New York. [Sec. 1-204 Comment (1) ], it says: "Subsection (1) recognizes that nothing is stronger evidence of a reasonable time than the fixing of such time by a fair agreement between the parties. However, provision is made for disregarding a clause which whether by inadvertence or overreaching fixes a time so unreasonable that it amounts to eliminating all remedy under the contract." I think this clause should be considered in light of whether Landsman's remedy failed in its essential purpose....
 MR. TURNER: Why not just let the jury decide, did Sam [Landsman] get a fair deal? I mean that's the point of the contract. It set forth terms and you agree to it, Judge.
 THE COURT: I would agree that the contract certainly should be given strong consideration where it operates fairly and not unconscionably. If you are telling me that you could put a twelve-month period in there and not fix a machine for a year and a half, and you say, guess what, I figured out what has been wrong with this machine all along, and we don't know when that occurred, but I figured it out. But guess what, I have been screwing around with this machine for longer than the warranty period, and so enforce the contract.
 MR. TURNER: I don't think that's a fair statement.
 THE COURT: ... I think if I leave this [the 12 month limitation] exactly like it is, it may just wipe him [Landsman] out of a remedy entirely. If it does that under a bad set of circumstances, this clause should have been stricken. How do you think I should straighten that out, Mr. Kneski? You cannot just destroy it and say the twelve-month period doesn't mean a ... thing because obviously reasonable people agreed to it....
 MR. KNESKI: I think you have a provision in there, Judge. I put a similar provision on the thirty-day thing....
 * * *
 Again, that was under [Sec. 1-204 Comment (1) ] ... the time limit may be eliminated if you find it fixes [a] time so unreasonable.
 THE COURT: I would agree with it if the jury finds it is so unreasonable that it eliminates all remedy under the contract.
 * * *
 The discussion turned to include whether the 30 day notice provision in the lease should also be subject to a reasonableness determination by the jury.
 MR. TURNER: ... I don't think it is for the jury to decide overall is a contract provision unreasonable or reasonable. I don't believe that's their right to decide that and just wipe it out because they, six or seven lay persons don't think it is fair. It was agreed upon. It has to be given some meaning.
 THE COURT: I agree it has to be given some meaning. I say I don't find the year period is unreasonable when something proves defective. I don't think that's the case. I think some of your own witnesses would say they have been fiddling with the machine and they believe it was the cause of something that has probably been in there longer than a year and then just didn't correct it. I think I may switch to Mr. Kneski's point of view.
 * * *
 MR. TURNER: We are going to stay with our position.
 THE COURT: We are talking about the reasonableness position. I assume this is the thing you are talking about, the time limitation.
 MR. KNESKI: Yes, I would apply that to the twelve-month. I would put after that sentence that begins on Page 1--
 THE COURT: Notice may be disregarded if you find it fixes a time so unreasonable that it amounts to eliminating all remedy under the contract.
 MR. KNESKI: Yes, sir.
 THE COURT: Let's move on to the next one.
 * * *
 MR. KNESKI: Just so I am clear, Judge, did we agree that one sentence on the second page of my issue on breach of warranty claim would be included in the instruction?
 THE COURT: I meant to agree with that language.
 MR. TURNER: Without waiving our objection, Your Honor, I would make a suggestion after the word "defective" in Paragraph 2, you could state "and whether such time limitation was reasonable."
 * * *
 THE COURT: I will include that.
 * * *
 The discussion next turned specifically to the reasonableness of the 30 day limitation.
 THE COURT: The issue is whether you [Landsman] did it [gave written notice] within thirty days. I think we already explained that in the jury instructions themselves.
 MR. TURNER: Again, we are not waiving our objection to these, Judge, by being dilatory here. For the record, Your Honor, we would want to renew our motion for directed verdict, have the Court rule on that.
 THE COURT: I will deny that.
 * * *
 
 
 [9]
 Although this case involves the lease of a machine and not a sale of goods, New York courts have extended provisions of N.Y.U.C.C. Article 2 to chattel leases. Industralease Automated & Scientific Equip. Corp. v. R.M.E. Enter., 58 A.D.2d 482, 396 N.Y.S.2d 427 (1977)
 
 
 [10]
 The trial judge reasoned that Continental should not be permitted to invoke a warranty time limitation if an identifiable defect is not found within the 12 month period because of Continental's failure to repair the machine. We agree with this reasoning, which essentially provides that if an identifiable malfunction occurs within the warranty period, the defective parts would be covered even if not actually specifically identified until after expiration of the warranty. Courts have suggested that this is the proper interpretation of warranties. Broe v. Oneonta Sales Co., 100 Misc.2d 1099, 420 N.Y.S.2d 436, 437 (N.Y.Sup.Ct.Special Term 1978) (cited in Walsh v. Ford Motor Co., 588 F.Supp. 1513, 1536 (D.D.C.1984). But that reasoning does not support disregarding the time limitation
 
 
 [11]
 See also Walsh v. Ford Motor Co., 588 F.Supp. 1513, 1535-36 (D.D.C.1984); Taterka v. Ford Motor Co., 86 Wis.2d 140, 271 N.W.2d 653, 657 (Wis.1978); Moulton v. Ford Motor Co., 13 U.C.C.Rep.Serv. 55, 59 (Tenn.Ct.App.1973), aff'd in relevant part, 511 S.W.2d 690 (Tenn.1974), cert. denied, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 109 (1974)
 
 
 [12]
 See supra note 1 (quoting warranty provision in paragraph 9(b). The warranty had prospective effect beyond 1973 only with respect to "replacement parts.") Id. A fair interpretation of the warranty provision indicates that replacement parts would be warranted against defects for a period of 12 months from the date of shipment of those parts
 
 
 [13]
 The 12 month limitation cannot be construed as anything other than reasonable. The lease extended for only a year, but provided for automatic annual renewals unless cancelled. Because it is conceivable that Landsman or any other lessee may lease the machine for only one year, it would be imprudent to provide a warranty that extends beyond the time a lessee is obligated to hold the machine
 
 
 [14]
 During the precharge conference, Continental objected to a jury determination of reasonableness with regard to both the 12 month warranty and the 30 day notice provision. Because it was clear to the trial judge that Continental's objections applied to both provisions, our previous conclusions are applicable
 
 
 [15]
 See also Neville Chem. Co. v. Union Carbide Corp., 294 F.Supp. 649, 654-55 (W.D.Pa.1968) (finding 15 day time limitation "manifestly unreasonable" under Sec. 1-204 as to discovery of latent defects), aff'd in part and vacated in part, 422 F.2d 1205 (3d Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Torrance v. Durisol, Inc., 20 Conn.Sup. 62, 122 A.2d 589, 592 (1956) (holding that court may void unreasonable time limitation which precludes all claims)
 
 
 [16]
 Continental also contends that Landsman's claim should be barred because the complaint filed on September 28, 1983 was more than two years after the cause of action accrued. Paragraph 9(e) of the lease states the following: "[n]either party shall bring any action under ... this agreement unless such action is commenced within 2 years after the cause of action has accrued." Compliance with the 30 day notice provision essentially determines when the "cause of action has accrued." A reasonable jury could have determined that the cause of action accrued on October 30, 1981, which is within two years of the filing of the complaint. Because we have found no error with respect to the jury's findings under the 30 day notice provision, we cannot say that the two-year limitations period bars Landsman's claims
 
 
 [17]
 If Landsman retained the machine longer than three months, he was to pay rent after the three-month period
 
 
 [18]
 During the period preceding 1986, Continental sent invoices marked "loan" to Landsman. Apparently there was a billing error and the loan status of the machine had not been changed over to an annual rental until 1986
 
 
 [19]
 The first letter was dated July 7, 1983 and was addressed to Mr. Samuel Landsman, President of Landsman Packing Company. The letter requested the return of "all leased machinery," and made reference to a telephone conversation where Mr. Landsman indicated he might retain the "older capping machine." The second letter was dated August 10, 1983 and was addressed to Mr. Peter Kneski, counsel for Landsman. This letter again requested the immediate return of the two capping machines
 
 
 [20]
 The trial judge's pertinent instructions regarding the conversion charge were as follows:
 On the counterclaim for conversion brought by [Continental], I instruct you that one who receives possession of the property of another and thereafter, without authority, intentionally exercises control over it in such a manner as to interfere with the owner's right of possession is guilty of conversion ...
 The burden of proof is on [Continental] to prove that [Landsman] intended to exercise such control over the property as to interfere with [Continental's] use and enjoyment of it. If you find that [Landsman] intended to exercise unauthorized control over the property in order to deprive [Continental] of its right in the property, then there was a conversion....
 The trial judge's use of the word "deprive" refers to a deprivation of Continental's right to the property, not necessarily a permanent deprivation of the property.
 
 
 [21]
 Trial Record at 24-1523, 24-1426, 24-1535-36
 
 
 [22]
 The trial judge instructed the jury that preservation of evidence was not a defense to conversion
 
 
 [23]
 See also Dunlap v. Hunting, 2 Denio 643, 644-45 (N.Y.1846); Holbrook v. Wight, 24 Wend. 169, 177 (N.Y.Sup.Ct.1840); Packard v. Getman, 6 Cow. 757, 759 (N.Y.1827); Lockwood v. Bull, 1 Cow. 322, 330 (N.Y.1823)
 
 
 [24]
 In order to rebut the prima facie evidence of conversion, Landsman needed to show that its refusal was justified and reasonable under the circumstances. See McEntee, 45 N.Y. at 37 (noting that qualified refusal must be reasonable and in good faith); Holbrook, 24 Wend. at 176 (stating that refusal must be in good faith and based on reasonable excuse). Landsman's arguments that he was holding the machine as evidence and his lack of intent to permanently deprive does not justify the refusal
 
 
 [25]
 If Landsman has returned the machine to Continental, this may be considered in mitigation of damages. Zymet v. Battari, 146 N.Y.S.2d 438, 439 (N.Y.App.Term 1955); Winkler v. Hartford Accident & Indemnity Co., 66 N.J.Super. 22, 168 A.2d 418, 422 (App.Div.), cert. denied, 34 N.J. 581, 170 A.2d 544 (1961)