**John W. UMPLEBY, Plaintiff–Appellee,**

v.

**POTTER & BRUMFIELD, INCORPORATED, a Siemens Company, Defendant–Appellant.**

**No. 94–2322.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1995.

Decided Nov. 3, 1995.

James A. Kornblum, Lockyear & Kornblum, Evansville, IN, Jack N. Vanstone (argued), Evansville, IN, for Plaintiff–Appellee.

Jon D. Goldman, Mary Lee Franke (argued), Kahn, Dees, Donovan & Kahn, Evansville, IN, for Defendant–Appellant.

Before CUDAHY, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

On May 11, 1994, John Umpleby ("Umpleby") prevailed in an age discrimination suit against his former employer, Potter and Brumfield, Inc. ("P & B") in Princeton, Indiana. Because the jury was given a form of verdict that misstated the law and allowed it to render a verdict on evidence that would be insufficient to prove P & B liable under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), we reverse and remand for a new trial.

## I. Background

P & B manufactures and sells electromechanical relays, solid state relays, and circuit breakers. Through the early 1970's the company had been profitable. The company, apparently because it did not invest in the technology necessary to create new and successful products, became increasingly unable to compete in the global marketplace. P & B's profits began to fall in the late 1970's and from 1981 through 1985 the company experienced a 2% to 3% loss of sales per year. As a result, P & B was put up for sale in 1985. Siemens, an international corporation headquartered in Germany, purchased the company. In an effort to turn things around, the company hired Roy Slavin as president and CEO. Slavin embarked on a strategy that included shifting product priorities and discontinuing some product lines. He also instituted, among other things, wage freezes, special retirement options, and involuntary reductions-in-force ("RIF") to help the company achieve its goals.

Umpleby began employment with P & B in 1964. He was originally a technician who focused on developing solid state electronic relays, but was moved to P & B's marketing division in 1982. Although he did not have a college degree, Umpleby was classified as an "Application Engineer." In 1988, P & B formed a separate solid state group in order to focus on turning around the company's money-losing solid state business. Umpleby was moved to this group in 1989. But even with the reorganization the solid state products line continued to lose money and the solid state group was unable to operate successfully. P & B therefore decided to disband the group. Some of the employees in the group were merged back into P & B's main organization. The company also stopped making new investments in this area. As part of this transition, the company also decided to cut back personnel. Eventually five of the nine positions in the solid state group were eliminated. Umpleby's position was the second job cut.

Umpleby was 51 years old when he was terminated by P & B in April of 1991. Because he suspected that the company had selected him for termination based on his age, he sued P & B in October of 1991 under the ADEA. Umpleby also alleged state law claims for breach of contract and failure to rehire.

In January of 1993, P & B moved for summary judgment. The district court granted P & B's motion with regard to the state law claims but allowed the case to go to trial on Umpleby's age discrimination claim. Here Umpleby alleged two theories of liability. First, he alleged that P & B engaged in a pattern or practice of discriminating against older workers. Second, he alleged that he had received disparate treatment based on his age. At the close of plaintiff's evidence, P & B moved for judgment as a matter of law on both claims. The district court granted P & B's motion on the pattern or practice claim because Umpleby had not presented sufficient evidence to enable a reasonable juror to find that P & B had engaged in a pattern or practice of age discrimination.

The court denied the other motion, however, and allowed the case to proceed under the disparate treatment theory. Over P & B's objection, the court also allowed Umpleby to use evidence that P & B engaged in a pattern of discrimination in order to prove that P & B possessed a discriminatory intent when it fired him. Before the jury retired to consider the case, P & B requested that the judge instruct the jury not to consider what P & B called plaintiff's "pattern or practice evidence" when evaluating P & B's intent to discriminate (or lack thereof) against Umpleby. The district court denied P & B's request. The jury then found in favor of Umpleby in an amount totaling $234,854.00. After the jury returned its verdict, P & B orally moved for judgment as matter a matter of law or, in the alternative, a new trial. Both motions were denied and P & B now appeals.

## II. Analysis

P & B raises three issues on appeal. First, P & B alleges that Umpleby failed to present sufficient evidence of P & B's intent to discriminate against him on the basis of age and therefore the district court erred in denying its request for judgment as a matter of law or, in the alternative, a new trial. Second, P & B alleges that the special verdict form was misleading and stated the wrong level of liability for which an employer may be liable under ADEA. Third, P & B alleges that it was error to admit evidence that the company engaged in a pattern or practice of age discrimination to prove intent in Umpleby's individual disparate treatment case and that it was also error to deny P & B's requested instruction to the jury on this point.

### A.

First we address P & B's allegations that the district court erred in failing to grant its motion for judgment as a matter of law, or in the alternative, a new trial. Both parties present extensive discussion on the issue in their briefs. We have also spent a considerable time reviewing and analyzing the record. With that it would appear that the evidence in this case may be insufficient to support a finding of age discrimination. Although P & B may have a persuasive argument for reversal, the issue is not properly before us on appeal. At the close of the plaintiff's evidence, P & B did present a detailed motion for judgment as a matter of law. At that point the court granted part of the motion. Fed.R.Civ.P. 50(b), however, requires that any motion not granted be renewed at the close of all the evidence. *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1139–40 (7th Cir.1994) (plain language of Rule 50(b) precludes judgment as a matter of law where party failed to renew its motion at the close of all the evidence).

■ It is true that before *Downes* this circuit did not rigidly enforce this predicate requirement, especially where a motion for a directed verdict was made at the close of the plaintiff's case (as happened here) *and* no prejudice has resulted to the nonmoving party from the failure to renew. *See, e.g., McKinnon v. City of Berwyn*, 750 F.2d 1383, 1389–90 (7th Cir.1984) (a number of courts, the Seventh Circuit included, have not enforced the Rule 50(b) requirement where no prejudice resulted to the other party); *Bonner v. Coughlin*, 657 F.2d 931, 938–39 (7th Cir.1981) (Seventh Circuit has advocated a flexible approach to Rule 50(b) and in some cases where the intent of the parties is clear will not rigidly interpret the rule's requirements). *Downes* acknowledged that *McKinnon* allowed a more flexible standard, but went on to say that when Rule 50 was reevaluated and amended in 1991 the advisory committee deliberately retained the requirement to move for judgment prior to the close of the trial. *Downes*, 41 F.3d at 1139–1140. Thus, the plain language required that the defendant "renew its directed verdict motion at the close of all the evidence." *Id.* In order to preserve its motion for judgment as a matter of law, P & B had to renew its motion at the close of all the evidence. Fed.R.Civ.P. 50(b). Because it did not do so we must affirm the district court's denial of P & B's motion for judgment as a matter of law.

■ In the alternative, P & B has requested a new trial based on insufficient evidence. Normally this would be a viable alternative where a party, as here, might be

entitled to judgment as a matter of law but for some reason did not move for judgment at the close of all the evidence. 9A Charles A. Wright & Arthur W. Miller, *Federal Practice and Procedure* § 2539 at 362 (2d ed. 1995); *Sokol Crystal Products v. DSC Communications Corp.*, 15 F.3d 1427, 1432 (7th Cir.1994) (district court is permitted to grant motion for new trial where jury's verdict is against the weight of the evidence). But in order to take advantage of this alternative, the motion for new trial must meet the same standards that would apply if the motion were made independently under Rule 59. 9A *Federal Practice and Procedure* § 2539 at 360–61. And that requires that the motion "state with particularity the grounds therefor." Fed.R.Civ.P. 7(b)(1); 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2811 at 131 (2d ed.1995) (Rule 59 is silent on the form and content of new trial motion and therefore the general rule on motions, Rule 7(b), applies). In this case P & B requested that the district judge put its oral motion in the record, but did not state its grounds for the motion, asking instead when the judge would like the briefs filed. The judge, however, stated that no briefs were necessary because he would deny the motions anyway.[1] Apparently for that reason P & B filed no written motion or briefs and we are therefore left with no record to review P & B's intended motion. We could speculate that P & B asserted that it was entitled to a new trial on the same basis that it had previously moved for judgment as a matter of law. But without that information in the record this is merely speculation. For this reason we also affirm the district court's denial of P & B's new trial motion based on insufficient evidence.

### B.

Second, P & B objects to the special verdict form used in this case, asserting that it misstates the level of liability for which an employer may be liable under the ADEA. After reviewing the special verdict form in conjunction with the jury instructions, we agree that the verdict form is defective.

█ The verdict form encapsulates the law of this case. It asked the jury to assess P & B's liability in a single question, which in effect transforms it into a general verdict. Thus, its accuracy is crucial. Question No. 1 on the verdict form reads:

> Do you find from a preponderance of the evidence that John Umpelby's age was *one of the reasons* for Potter & Brumfield to discharge him?

Appellant's App.Tab E (emphasis supplied).

This question is not one of a series that walks a jury through a legal analysis. Rather, the question funnels all of the law of this case into one sentence. Unfortunately, it is an incorrect statement of the law under the ADEA. This inquiry employs too soft a standard and lowers the threshold of liability below what our cases have stated. Umpleby, as any other age discrimination plaintiff, is required to demonstrate that age accounts for the decision, that is, "whether the same events would have transpired if the employee had been younger than 40 and everything else had been the same." *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). The jury must therefore look for more than whether age was merely "one reason" for the discharge, but must determine whether age was a substantial factor in the decision and whether it "tipped the balance" in favor of discharge. *Id.* at 345; *Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 658 (7th Cir.1991). In other words, the jury must determine whether age was the "but for" cause of the adverse decision. *Visser*, 924 F.2d at 658; *Brown v. M & M/Mars*, 883 F.2d 505, 507 (7th Cir.1989). Here it needed only to conclude that age was one reason—perhaps a small reason among

---

1. In a document titled "Reflections on the Record" dated November 18, 1994, the court indicated that the following would be reflected on the record of May 11, 1994:

 After the jury returned a verdict in favor of the Plaintiff, defense counsel informs the Court they are moving for a judgment notwithstanding the verdict or for a new trial and ask when the Court expects briefs to be filed. The Court informs defense counsel that they may file a written motion but that the Court will not grant a motion for judgment notwithstanding the verdict or a motion for a new trial.

many—in order to find liability. Thus, the special verdict question used fails to accurately reflect the controlling law.

 A special verdict question may be so defective in its formulation that its submission constitutes reversible error. 9A Wright & Miller, *Federal Practice and Procedure*, Civil 2d § 2508, p. 193. A judgment entered upon an answer to a question which inaccurately frames the issue to be resolved by the jury must be reversed. *Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir.1981) (and citations therein), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982). For this jury there was only one question. A "yes" answer meant liability for P & B. While the district court is given broad discretion in framing a special verdict, the verdict form in this case did not accurately and correctly present the key issue to the jury. Therefore, we must conclude that it was an abuse of discretion and thus reversible error to draft the dispositive inquiry in this case in such a way that it redefined "but for" causation to mean just one of many potential causes.

Although neither party referenced relevant jury instructions when briefing this issue, we have reviewed the record to determine if the law of this case better defined "a reason" or "one of the reasons" as a "but for cause of an adverse employment decision." *Brown v. M & M/Mars*, 883 F.2d at 507. The jury instructions not only did not correct this error in the verdict form, but more likely further clouded the picture. On this point, the jury was instructed:

> Ultimately, in order to show that a reason articulated by Potter & Brumfield was a pretext, John Umpleby would have to show that his age was a determining factor in Potter & Brumfield's decision to terminate him. John Umpleby need not prove that age was the sole factor motivating Potter & Brumfield's decision, only that age was a determining factor in the sense that John Umpleby would not have been terminated but for Potter & Brumfield's motive to discriminate on the basis of age. If you find that age was *one reason* and that, in

fact, John Umpleby's age made a difference in determining whether or not he was to be terminated, then a violation of the Act has been shown and you should then turn to consideration of the amount of damage, if any, the plaintiff has sustained. The plaintiff demonstrates that age was a determining factor if he shows that "but for" John Umpleby's age, he would not have been terminated. On the other hand, if you find that John Umpleby's *age was not a reason* for his termination, that is that he would have been terminated regardless of his age, then you may not find that the Act has been violated.

Jury Instruction No. 21, pp. 21–b and 21–c (emphasis supplied).[2]

This instruction correctly states that a plaintiff must prove that his age was the "but for" cause of the adverse employment decision. But it also effectively redefines "but for" to mean just one of many potential causes. This problem is no doubt due to the use of the phrase "a determining factor" that has crept into usage in this area, a phrase that has been recently criticized by this court precisely because it lacks any legal meaning and is subject to misinterpretation. *Gehring*, 43 F.3d at 343–44. This use of this confusing phrase in conjunction with references to "one reason" and "a reason" to modify the "but for" test left the jury with the verdict form as the only clear statement of what it was required to do. Further, as noted in part A above, our extensive review of the evidentiary record disclosed a number of testimonial "reasons" that probably should not have been admitted into evidence (although these Rule 50 issues were not properly preserved). These evidentiary matters only magnify the potential harm encapsulized in the defective verdict form. We therefore conclude that the jury was not presented with a fair and accurate form of verdict on the level of liability applicable in this case. For this reason a new trial is warranted in this case.

## C.

Finally, P & B alleges that it was error to admit evidence that the company engaged in

---

**2.** Curiously, P & B did not object to the language included in this instruction, which suffers from the same defect as the verdict form: it allowed the jury to find that age was "one reason" for

determining whether Umpleby should be terminated, and stated that there would be no violation if his age "was not a reason for his termination."

a pattern or practice of discrimination to prove intent in Umpleby's individual disparate treatment case and also alleges that it was error to deny P & B's requested instruction to the jury on this point. Although the district court granted P & B's motion for a directed verdict on plaintiff's pattern and practice claim, it did not give the jury P & B's requested instruction to disregard all evidence admitted to prove this claim. P & B objected to the court's instruction because it gave no guidance to the jury to determine what evidence it could or could not consider. While there were many procedural problems that occurred below, including the arguably erroneous admission of much evidence, we need not reach these issues in light of our decision to remand for a new trial.

### III. Conclusion

For the foregoing reasons, we reverse the judgment of the district court and remand for a new trial.

REVERSED AND REMANDED.