[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**12/14/99**
**THOMAS  K. KAHN**
**CLERK**

———————————————————

No. 98-4566

———————————————————

D. C. Docket No. 96-8750-CV-DTKH

JOHN FARLEY,

Plaintiff-Appellee,
Cross-Appellant,

versus

NATIONWIDE MUTUAL INSURANCE COMPANY,

Defendant-Appellant,
Cross-Appellee.

———————————————————

No. 98-4799

———————————————————

D. C. Docket No. 96-8750-CV-DTKH

JOHN FARLEY,

Plaintiff-Appellee,

versus

NATIONWIDE MUTUAL INSURANCE COMPANY,

———————————————

Appeals from the United States District Court
for the Southern District of Florida

———————————————

**(December 14, 1999)**

Before ANDERSON, Chief Judge, MARCUS, Circuit Judge, and MILLS[*], Senior
District Judge.

MARCUS, Circuit Judge:

Nationwide Mutual Insurance Company appeals from a jury verdict entered
in favor of the Plaintiff, John Farley, on his American with Disabilities Act
("ADA") and Age Discrimination in Employment ("ADEA") claims. The jury
specifically found that the Defendant, Nationwide, wrongfully terminated Farley
from his claims adjustor position based on his disability and age, and judgment was
entered for Farley in the amount of $585,120. Nationwide now appeals this verdict
alleging both that the jury instructions contained material mistakes of law and that
the compensatory damages awarded were excessive. On cross-appeal, Farley
contests the trial court's (1) grant of summary judgment on his retaliation claims,
(2) award of one year of front pay rather than reinstatement, (3) refusal to include

—————————————————

[*]Honorable Richard Mills, Senior U.S. District Judge for the Central District of
Illinois sitting by designation.

2

front pay in the liquidated damages award, and (4) denial of attorney's fees for post-verdict work. After thorough review, we affirm the entire trial court judgment except for its grant of summary judgment on Plaintiff's retaliation claims.

I.

The essential facts adduced at trial include these. John Farley worked as a claims adjuster at Nationwide Mutual Insurance Company ("Nationwide") from 1985 to 1995. A claims adjustor is charged with handling all aspects of an insurance claim from investigating a damages claim to negotiating and settling the claim with the policyholder. In that time, Farley received numerous pay raises and satisfactory or above performance evaluations. However, Farley also suffered from several long-term disabilities including alcoholism, post-traumatic stress disorder, and depression.

In 1991, Farley was placed under the supervision of District Claims Manager Hugh Glatts. That year was particularly stressful for Farley. His mother died and his young daughter was diagnosed with a rare and potentially fatal disease. These events conjoined with Farley's job-related stress and pre-existing disabilities to trigger a decline in Farley's job performance and mental well-being. On August 5, 1991, Farley met with Glatts to inform him of these events. Glatts

3

responded by criticizing Farley's job performance and indicating that Farley would be terminated. Farley then collapsed in Glatts's office. Two days later, Glatts threatened to replace Farley with Dominic Christo, a co-worker in his mid-twenties, because Christo was "more receptive to change."

Shortly thereafter, Farley began seeing a psychiatrist and a psychologist. During this period, Farley was able to maintain successfully his job responsibilities at Nationwide. However, Farley was subjected to numerous jokes by Glatts and other Nationwide managers about his mental health. In the fall of 1991, a cartoon depicting Farley was posted prominently on the company's bulletin board. The bulletin board was used for employee pictures, job listings, and other employment-related notices. The cartoon featured a psychologist talking to a patient lying on a couch. A picture of Farley's head had been inserted over the head of the patient. The cartoon caption read "Just Plain Nuts." A similar cartoon had been mocked up for another co-worker, Warren Peede, who suffered from a mental disability. The cartoons were created by Tom Sutterfield, a Nationwide supervisor who knew of Farley's disabilities. Sutterfield eventually would become a supervisor of Farley's in late 1994.

Over the rest of his tenure with Nationwide, Farley endured disability-related jokes by Glatts in front of co-workers and received additional anonymous

cartoons in his mailbox.  Glatts repeatedly would insult other disabled workers as well.   Notably, Glatts expressed a desire to terminate Warren Peede, a co-worker of Farley's who suffered from a mental disability as the result of a car accident. Glatts expressed a fear that Peede was "dangerous" to work around because of his mental disability, and in 1991, Glatts asked Peede to take a "disability retirement."

In April 1995, Farley requested and received a week of disability leave on the recommendation of his physician for stress-related disabilities. Shortly before this request, Sutterfield had told Farley that his performance was satisfactory.  His most recent performance evaluation had been above-average.  Upon Farley's return, however, Sutterfield informed Farley that Nationwide management found his stress to be "unusual" and that they did not believe in stress-related disabilities. Farley was then placed on thirty days of "work probation" for allegedly poor technical performance, and all of his work files were taken away for "review." Farley testified that no other adjustor had ever been stripped of all of his files, and that the action prevented him from fulfilling his work responsibilities.  The  stress from these events apparently worsened Farley's physical condition, and he took a month of disability leave in May.

While on leave, Farley filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") on May 10, 1995, and informed

his two supervisors, Sutterfield and Glatts, of the complaint. Glatts subsequently told Farley that he had received a copy of the complaint and that Nationwide's general counsel was handling it. When Farley returned to work on June 5, he requested a five day, forty hour a week work schedule as a reasonable work accommodation. Farley testified that during this timeframe he was working eighteen to twenty hours a day to satisfy Nationwide's work probation demands. Glatts allegedly refused his request, even though it was official company policy that claims adjustors work only thirty-eight and three-quarters of an hour per week. Farley was terminated one month later on July 8, 1991 for allegedly poor technical performance. John Farley was forty-seven years old. His replacement, Heath Dillard, was in his late twenties.

On September 24, 1996, John Farley commenced this lawsuit against Nationwide under the ADA, see 42 U.S.C. §§ 1201 et. seq., and the ADEA, see 29 U.S.C. §§ 621 et. seq., in the Fifteenth Judicial Circuit of Palm Beach County, Florida alleging that Nationwide wrongfully terminated him because of discrimination based on his disability and age as well as retaliation for his complaint filed with the EEOC. The suit then was removed timely to the Southern District of Florida and referred by agreement of the parties to a magistrate judge for trial and all further proceedings pursuant to 28 U.S.C. § 636(c). Prior to trial,

Nationwide moved for summary judgment. The magistrate judge denied the motion as to Farley's discrimination claims under the ADA and ADEA but granted the motion as to Farley's retaliatory discharge claim. Farley's discrimination claims were tried to a jury in November 1997.

On the morning of the final day of trial, the trial court read the proposed verdict form to both parties and allowed them to comment on the form. Notably, Nationwide made no objections to the verdict form. The trial court also distributed copies of the jury instructions to both parties which gave them an opportunity to call an error to the court's attention. Again, Nationwide interposed no objection to the court's instructions.

Shortly after the jury was excused to deliberate later that day, Nationwide identified an alleged typographical error in the jury instructions. Nationwide explained that the term "qualified disability" did not exist in the caselaw and that the instruction should have read "qualified individual with a disability." The trial court dismissed the objection and ordered a recess.

Later that day, the jury returned a verdict in favor of the Plaintiff on both the ADA and ADEA claims, finding the termination to be a result of intentional and willful discrimination on the basis of age and disability. They awarded Farley a total of $585,120 comprised of these elements: $110,120 for past lost earnings,

$25,000 in lost future earnings, and $450,000 in emotional pain and suffering damages.

After trial, Nationwide renewed its motion for judgment as a matter of law, and also moved for a new trial based on alleged error in the jury verdict form and the accompanying jury instructions. Both motions were denied on March 2, 1998 in their entirety. At the same time, Nationwide moved for remittitur regarding the jury award. The magistrate judge granted the motion in part, reducing the back pay award to $54,501.84 (i.e., one year of full back pay taking into account the difference in salary between Farley's new job and his job at Nationwide) and the front pay award to $5,600. But the judge also denied the motion in part and reduced the emotional pain and suffering damages to only $300,000-- the maximum recovery amount allowed under 42 U.S.C. §1981a(b)(3)(D).

II.

A.    <u>Jury Instructions</u>

We review Nationwide's verdict form and jury instruction claims against a familiar legal landscape. Federal Rule of Civil Procedure 51 reads in pertinent part, "no party may assign as error an instruction unless he objects thereto <u>before</u> the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." <u>See</u> Fed. R. Civ. P. 51 (emphasis added). We

8

interpret Rule 51 strictly, and require a party to object to a jury instruction or jury verdict form <u>prior</u> to jury deliberations in order to preserve the issue on appeal. <u>See</u> <u>Landsman Packing Co. v. Continental Can Co.</u>, 864 F.2d 721, 726 (11th Cir. 1989) (citing <u>Lang v. Texas & Pacific Railway Co.</u>, 624 F.2d 1275, 1279 (5th Cir. 1980)).[2]   A party who fails to raise an objection to a verdict form interrogatory or jury instruction prior to jury deliberations waives its right to raise the issue on appeal.  <u>See</u> <u>Wood v. President of Spring Hill College</u>, 978 F.2d 1214, 1221 (11th Cir. 1992); <u>Golub v. J.W. Gant & Assocs.</u>, 863 F.2d 1516, 1521 (11th Cir. 1989) (holding that "'objections to the form of interrogatories in a special verdict must be raised before the jury is charged. . . . Otherwise, they are waived.'") (citation omitted)).  This requirement ensures that a trial judge has an opportunity to correct any error before a jury has begun its deliberations.  <u>See</u> <u>Landsman</u>, 864 F.2d at 726 (citing  <u>Pate v. Seaboard Railroad Inc.</u>, 819 F.2d 1074, 1082 (11th Cir. 1987)).  We have recognized only two exceptions to this rule: first, where a party has made its position clear to the court previously and further objection would be futile; and second, where it is necessary to "correct a fundamental error or prevent a miscarriage of justice."  <u>Landsman</u>, 864 F.2d at 726 (citing <u>Lang</u>, 624 F.2d at

---

[2]Decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981 constitute binding precedent in our circuit.  <u>See</u> <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

1279).  This second exception is known as "plain error" review.  See Wood, 978 F.2d at 1221.

Plain error review is an extremely stringent form of review.  Only in rare cases will a trial court be reversed for plain error.  In Olano, the Supreme Court outlined four requirements for plain error: first, an error occurred; second, the error was plain; third, it affected substantial rights; and finally, not correcting the error would seriously affect the fairness of the judicial proceeding.  United States v. Humphrey, 164 F.3d 585, 588 n.3 (11th Cir. 1999) (citing United States v. Olano, 507 U.S. 725, 732 (1993)).

We have interpreted the Olano test strictly in the context of erroneous jury instructions and verdict forms.  Moreover, we accord the trial judge "wide discretion as to the style and wording employed" in jury instructions and verdict forms.  Carter v. Decisionone Corp., 122 F.3d 997, 1005 (11th Cir.1997) (citing Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1543 (11th Cir. 1996)).  And we review jury instructions and verdict forms together rather than separately for reversible error.  See Carter, 122 F.3d at 1005;  McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1072 (11th Cir. 1996) (citing Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1569 (11th Cir. 1991)).  In addition, we have announced that reversal for plain error in the jury instructions or verdict form will

occur "only in exceptional cases where the error is 'so fundamental as to result in a miscarriage of justice.'" Montgomery v. Noga, 168 F.3d 1282, 1294 (11th Cir. 1999) (quoting Iervolino v. Delta Air Lines, Inc., 796 F.2d 1408, 1414 (11th Cir. 1986) (citation omitted) (emphasis added)). To meet this stringent standard, a party must prove that the "'challenged instruction was an incorrect statement of the law and [that] it was probably responsible for an incorrect verdict, leading to substantial injustice.'" Noga, 168 F.3d at 1294 (quoting Pate, 819 F.2d at 1083). This element is satisfied if a party proves that the instruction will "'mislead the jury or leave the jury to speculate as to an essential point of law.'" Noga, 168 F.3d at 1294 (quoting Pate, 819 F.2d at 1083) (citation omitted) (emphasis added)). In other words, the error of law must be so prejudicial as to "'have affected the outcome of the proceedings.'" United States v. Mitchell, 146 F.3d 1338, 1343 (11th Cir. 1998) (quoting Olano, 507 U.S. at 734).

Nationwide raises a host of objections to the jury verdict form and accompanying instructions, citing five errors: first, the verdict form contained a typographical error, reading "qualified disability" instead of "qualified individual with a disability"; second, the verdict form allowed recovery for both known and "perceived" disability discrimination; third, the verdict form contained only one box for all emotional pain and suffering damages, even though the ADA authorizes

11

recovery for emotional pain and suffering but the ADEA does not; fourth, the jury instructions failed to outline the burdens of proof and production under McDonnell Douglas; and finally, the jury instructions erred as to the ADA and ADEA causation requirements.

None of these objections were raised prior to the beginning of jury deliberations. Prior to closing argument, the trial court reviewed the final verdict form and the final jury instructions with counsel for both parties. Nationwide failed to raise any of these objections. After the jury was excused to begin deliberations, Nationwide, for the first time, raised the typographical error concerning the term "qualified disability" with the trial court. The other four issues were raised for the first time on appeal. We therefore review all five claims only for plain error.

First, Nationwide contends that the first verdict interrogatory contained a material mistake of law causing irreparable prejudice. The interrogatory reads:

> Do you find from a preponderance of the evidence that the Plaintiff had a qualified disability at the time the Plaintiff was terminated from his employment with the Defendant?

Nationwide suggests that the interrogatory should have asked if Plaintiff was a "qualified individual with a disability" rather than use the term "qualified disability." Nationwide observes that the term "qualified disability" is not found in

12

the ADA or the EEOC's interpretive guidelines and was not explained by the jury instructions. Nationwide adds that the typographical error may have confused the jury in its deliberations in adjudging whether Farley met the statutory definition of a "qualified individual with a disability."

We are not persuaded. While the "qualified disability" language on the verdict form may well be a scrivener's error,[3] we can discern no plain error from its use. Again, plain error requires an error "'so fundamental as to result in a miscarriage of justice.'" Noga, 168 F.3d at 1294 (quoting Iervolino, 796 F.2d at 1414) (citation omitted). Moreover, we do not analyze a verdict form in isolation for plain error.

The jury instructions used by the trial court plainly stated the proper definition of the term "qualified individual with a disability" in great detail. The instruction was taken directly from a well-known federal jury pattern instruction book, Devitt & Blackmar's Federal Jury Practice and Instructions, and nowhere

---

[3]We note that some courts, as Nationwide admits in its renewed motion for judgment as a matter of law, have used the term "qualified disability" when referring to whether a particular disability qualifies under the ADA. See, e.g., Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 725 (5th Cir. 1995) (using the term "ADA-qualified disability" as a shorthand to discuss whether an injured arm met the statutory definition of disability). The reason courts have used the "qualified disability" language is that not all impairments meet the statutory definition of an ADA disability. That said, in this case, there was no dispute as to whether Farley's disabilities, which included depression, alcoholism, and post-traumatic stress disorder, met the ADA definition.

13

did it mention the term "qualified disability."   Indeed, the instruction accurately reflected our caselaw, informing  the jury that "the term qualified individuals with a disability as used in these instructions, means an individual with a disability who can perform the essential functions of the employment position which the Plaintiff holds."  In short, the instruction did not contain a mistake of law.

We add that the verdict form did not contain plain error.  When the verdict form is read in conjunction with the comprehensive and correct jury instruction, the "qualified disability" error becomes harmless.  See Russell v. Plano Bank & Trust, 130 F.3d 715, 722 (5th Cir. 1997) (finding single typographical omission of the term "reasonable accommodation" in a jury instruction that fully explained the term "reasonable accommodation" in other paragraphs did not constitute plain error).  Here, it is plain that the jury received an accurate definition of the ADA requirement for a "qualified individual with a disability."

Second, Nationwide contends that the second verdict interrogatory also contained a material mistake of law.  The interrogatory reads:

> Do you find from a preponderance of evidence that the Plaintiff was intentionally discriminated against because the Defendant knew or perceived him to have a disability?

Nationwide argues that an ADA violation based on a "perceived" disability is a distinct and separate cause of action with its own burdens of pleading and proof,

and that its inclusion on the verdict form without an explanatory jury instruction left the jury to supply its own legal definition for a "perceived disability."

We likewise find this argument to be without merit. Nationwide's own proposed jury instructions use the same "known or perceived" language that Nationwide now objects to in the verdict form. Nationwide's proposed instruction on disability discrimination reads in pertinent part:

> Plaintiff claims that the Defendant intentionally discriminated against him in violation of a federal law called The Americans with Disabilities Act, because the Defendant knew and/or perceived him as disabled. . . . It is unlawful to discriminate . . . against a qualified individual who has a disability or because of the perception that such an individual has a disability. . . . The Plaintiff must prove by a preponderance of the evidence that the Defendant knew and/or perceived him as being impaired.

(emphasis added). We repeatedly have held that "[we] will not find that a particular instruction constitutes plain error if the objecting party invited the alleged error by requesting the substance of the instruction given." Wood, 978 F.2d at 1223 (11th Cir. 1992) (citing EEOC v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990); Crockett v. Uniroyal, Inc., 772 F.2d 1524, 1530 n.4 (11th Cir. 1990)). Nationwide therefore has waived its objection to this interrogatory. See Wood, 978 F.2d at 1223.

15

Moreover, any purported error was harmless. The record plainly shows that no dispute existed over whether Nationwide "knew or perceived" that Farley had a disability. Nationwide was fully aware from 1991onwards that Farley suffered from several long-term disabilities including depression, alcoholism, and a stress disorder later diagnosed as post-traumatic stress disorder. Indeed, Farley expressly told Glatts in 1991 that he suffered from several disabilities including alcoholism and depression. Farley also requested and was granted disability leave in April and May of 1995. Nationwide knew and treated Farley as if he were actually disabled. At trial, Nationwide never argued that Farley did not actually possess a disability. As a result, the interrogatory references to a "perceived" disability were of no moment, and certainly did not constitute plain error.

Third, Nationwide argues that the trial court erred in using only one box on the jury verdict form for emotional pain and suffering damages since the case concerned two separate statutory causes of action (an ADA and ADEA claim), of which, one (the ADEA claim) did not allow for the recovery of emotional pain and suffering damages. The damages' sections were listed in a single interrogatory and read as follows:

    5.    Past lost earnings              $_____
          Future Lost Earnings,          $_____

16

> reduced to present value
>
> Emotional Pain and suffering,    $_____
> inconvenience and
> mental anguish
>
> Total Damages                           $_____

The jury was instructed to proceed to question five if it answered "yes" to either question two or three-- question two related to ADA liability and question three to ADEA liability.  The jury answered <u>both</u> questions two and three in the affirmative, and awarded damages under question five.  Nationwide contends that by merging the damages for both statutes, the jury may have been confused when awarding emotional pain and suffering damages.  In other words, some portion of the damages award for pain and suffering may have been granted for an ADEA violation in contravention of the ADEA's provisions.

We are satisfied that this alleged error does not constitute plain error. Notably, at trial, Nationwide neither objected to trying the ADA and ADEA claims together nor requested separate verdict forms for each claim.  The trial court simply used its discretion to arrange the damages into a single interrogatory to be accompanied by detailed instructions on the ADA and ADEA.  The jury instructions clearly explained what types of damages could be awarded for each cause of action.  The special ADA instruction allowed for recovery for backpay

17

and emotional pain and suffering.[4]  The special ADEA instruction allowed

recovery <u>only</u> for back pay.[5]  The ADEA instructions were taken with slight

modification from the Eleventh Circuit Civil Pattern Instructions.  <u>See</u> <u>Eleventh</u>

<u>Circuit Pattern Jury Instructions, Civil Cases</u>, Age Discrimination in Employment

Act § 7.1 (West, 1990).  The ADA instructions were taken with slight modification

from Devitt & Blackmar's federal pattern instructions.  <u>See</u> Devitt & Blackmar,

<u>Federal Jury Practice and Instructions</u>, v.3 §104A.11 (West 1997).  The jury was

instructed unambiguously on the types of damages compensable under each

statute.

---

[4]The special ADA instruction, among other things, reads:

> If you find that the Defendant intentionally discriminated against the Plaintiff because of his disability, . . . [y]ou may award compensatory damages, based on the evidence introduced at trial, for future pecuniary losses, emotional pain and suffering, inconvenience, and mental anguish.

[5]The special ADEA instruction, among other things, reads:

> In the event that you are convinced by the evidence that Defendant did discriminate against the Plaintiff [because of his age], . . . you must award Plaintiff back pay, that is, you are to award the Plaintiff an amount equal to the pay that he would have received from the Defendant had he not been terminated from the time that he was discharged until the date of trial.

Moreover, the jury found Nationwide liable under the ADA, and therefore was entitled to award compensable damages for Farley's emotional pain and suffering. Whatever error might have occurred from using a single damages interrogatory was rendered harmless by the jury verdict. In addition, the bulk of discriminatory conduct directed at Farley (including nasty cartoons, verbal insults, and disparate workplace treatment) almost exclusively concerned his disability and not his age. Nationwide offers no reason or logic to explain how the pain and suffering damages awarded to Farley could have been inflated as a result of the single compensatory damages box on the verdict form. We therefore conclude that the damages box did not comprise a miscarriage of justice or plain error.

Fourth, Nationwide contends that because the jury instructions failed to outline the McDonnell Douglas burden of proof and production framework, plain error occurred. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this familiar framework, a plaintiff must first establish a prima facie case of discrimination. The burden of production then shifts to the defendant who must articulate a legitimate non-discriminatory reason for the challenged employment decision. And finally, the plaintiff then bears the ultimate burden of persuasion that the defendant's proffered reason is a pretext for discrimination. See Combs v.

19

Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997). Nationwide's

McDonnell Douglas argument is without merit.

The McDonnell Douglas stages are simply a method of analysis for

organizing a discrimination case in its initial stages to determine if a case has

enough evidence to reach a jury in the first place. As the Supreme Court has

explained, this framework is "'merely a sensible, orderly way to evaluate the

evidence in light of common experience as it bears on the critical question of

discrimination.'" United Postal Serv. Bd. v. Aikens, 460 U.S. 711, 715 (1983)

(quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978)). The

Supreme Court reiterated this instruction recently in Hicks, directing that once the

McDonnell Douglas framework has been met by both parties in the pretrial stages,

it "simply drops out of the picture" when the jury begins its deliberations. St.

Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

This approach is well-founded since the McDonnell Douglas framework has

become a complicated legal doctrine, and there is a strong likelihood of jury

confusion over its individual components. As we have observed, "[a]lthough

'statements [like 'prima facie case' and 'burden of production'] faithfully endeavor[]

to track the three-step formulation of McDonnell Douglas Corp. v. Green . . ., they

create[] a distinct risk of confusing the jury." Dudley v. Wal-Mart Stores, Inc., 166

20

F.3d 1317, 1322 (11th Cir. 1999) (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 381 (2d Cir.1994) (citations omitted)).  For this reason, we clearly have directed that juries should not be instructed on the McDonnell Douglas framework.  See Dudley, 166 F.3d at 1322 (observing that it is "unnecessary and inappropriate to instruct the jury on McDonnell Douglas analysis").  Three of our sister circuits have adopted a similar position.  See Cabrera, 24 F.3d at 381 (noting that "the distinction between burden of persuasion and burden of production is not familiar to jurors, and they may easily be misled by hearing the word 'burden' (though referring to a burden of production) used with reference to a defendant in an explanation of that part of the charge that concerns a plaintiff's burden of persuasion"); Gehrig v. Case Corp., 43 F.3d 340, 343 (7th Cir. 1994) (reading Aiken and Hicks to not require jury instructions on McDonnell Douglas); Walther v. Lone Star Gas Co., 952 F.2d 119, 127 (5th Cir.1992) (observing that "[i]nstructing the jury on the elements of a prima facie case, presumptions, and the shifting burden of proof is unnecessary and confusing").  The trial court's decision to not instruct the jury on McDonnell Douglas therefore was proper.

Finally, Nationwide asserts that the jury instructions erred in delineating the causation requirements of the ADA and ADEA.  Nationwide specifically objects to two phrases in the instructions: first, that discrimination based on disability may be

21

shown if disability was "a motivating factor" in the Plaintiff's discharge; and finally, that discrimination based on age may be shown if age was "one of the reasons" for Plaintiff's discharge.   We examine each claim in turn.

As for the special ADA instruction, Nationwide argues that the trial court erred by not including language stating that disability had to be "the motivating factor" rather than "a motivating factor."  The instruction, closely modeled on Devitt & Blackmar's federal pattern instructions, directly references the statutory language, reading "[i]t is unlawful for an employer to intentionally discriminate against a qualified individual with a disability because of that person's disability." (emphasis added).  Cf. 42 U.S.C. § 12112(a).  The instruction  then continues, "[the Plaintiff must prove that] the Defendant intentionally discriminated against the Plaintiff, that is, the fact that the Plaintiff was a qualified person with a disability was a motivating factor in the Defendant's decision to terminate the Plaintiff."[6]  We find no plain error in this jury instruction.

_____

[6]The instruction, among other things, states:

> It is unlawful for an employer to intentionally discriminate against a qualified individual with a disability because of that person's disability.  In this case, the Plaintiff claims that the Defendant intentionally discriminated against him because he had a disability. . . .  In order for the Plaintiff to establish his claim of intentional discrimination by the Defendant, he has the burden of proving the following

The ADA requires that a plaintiff prove by a preponderance of the evidence that she was discriminated against "because of" her disability. 42 U.S.C. § 12112(a). We unambiguously have held that the ADA's "because of" causation language is defined as "a factor that <u>made a difference in the outcome</u>." <u>McNely</u>, 99 F.3d at 1077 (emphasis added). In explaining this standard, we explicitly rejected a reading of the ADA's "because of" language that would require plaintiffs to demonstrate that they were discriminated against <u>solely</u> because of their disability. <u>See</u> <u>id.</u> In so doing, we observed that the statute "merely imposes a <u>'but-for'</u> liability standard." <u>Id.</u> Therefore, we simply require that a disability be shown to be a determinative, rather than the sole, decision-making factor.

The trial court's special ADA jury instruction correctly stated our law. <u>McNely</u>'s "but-for" liability standard is perfectly consonant with the "motivating

---

essential elements by a preponderance of the evidence that:

1.    He is a qualified person with a disability, as the term is defined in these instructions;

2.    The Defendant intentionally discriminated against the Plaintiff, that is, the fact that the Plaintiff was a qualified person with a disability was a motivating factor in the Defendant's decision to terminate the Plaintiff.

3.    As a direct result of the Defendant's intentional discrimination, the Plaintiff sustained damages.

23

factor" language of the instruction. A "motivating factor" is synonymous with a "determinative factor" or, in the language of McNely, a factor which "made a difference in the outcome." McNely, 99 F.3d at 1077. While using "but-for" language would have been a clearer exposition of the law, the use of the "motivating factor" language is not a clear misstatement of the law, and certainly does not rise to the level of a plain error so fundamental as to affect the fairness of the proceedings.

As for the special ADEA instruction, Nationwide argues that the court erred in not using language denoting that age had to be the "sole" reason for discharge in order to hold Nationwide liable. The trial judge instead opted for the Eleventh Circuit pattern jury instructions on the ADEA liability standard. The instruction reads in pertinent part, "it is not necessary for the Plaintiff to prove that age was the sole or exclusive reason for the Defendant's decision; it is only necessary for the Plaintiff to prove that age made a difference." Nationwide claims that this language allowed the jury to find ADEA liability if age was "only one of the reasons" for Plaintiff's discharge.

We reject this argument. We have never found this ADEA pattern instruction to be a material mistake of law. Moreover, nowhere does the instruction allow a finding of liability if age was merely one of several

considerations by the defendant. The instructional language directly follows our ADEA caselaw. In Carter, the defendant objected to an ADEA instruction that allowed a finding of age discrimination if age was a "determinative factor" in the challenged employment decision. See Carter, 122 F.3d at 1005. We disagreed, plainly holding that the "determinative factor" language was "a correct statement of the law." Id. Nationwide's argument is therefore foreclosed.

In addition, the special ADEA instruction closely follows our holding in McNely. McNely specifically endorsed the "made a difference" interpretation of the ADA's "because of" causation requirement, and specifically rejected Nationwide's argument that "because of" means "sole." See McNely, 99 F.3d at 1077. The ADEA shares the same statutory "because of" causation requirement. See 29 U.S.C. § 623. In addition, because of the similarities between the ADA and ADEA, we often apply the same doctrinal analysis from one statute to the other. See, e.g., Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1447 (11th Cir. 1998) (applying ADEA and Title VII "adverse employment action" doctrine to ADA context). In this instance, we see no reason why McNely should not govern the interpretation of the ADEA's "because of" causation requirement. As such, the

special ADEA instruction accurately reflected the "but-for" standard of liability

for ADA and ADEA claims.[7]


B.      Excessiveness of the Compensatory Damages Award


Nationwide also challenges the trial court's decision to remit the jury's

compensatory damages award to $300,000 (the maximum allowed under 42 U.S.C.

§1981a(b)(3)(D)), claiming that the trial evidence did not support so large a

compensatory award.  The jury originally had awarded Farley $450,000 in

emotional pain and suffering damages.  We disagree with Nationwide.

Our review of a trial court's decision to remit a jury's award of

compensatory damages is highly deferential.  We have held that "[o]nce a

---

[7]Nationwide cites to a Seventh Circuit decision, Umpleby v. Potter & Brumfield, Inc., 69 F.3d 209 (7th Cir. 1995), in challenging the "made a difference" language used by the trial court in the special ADEA jury instruction.  However, Umpleby, if anything, supports our result today.  In Umpelby, the ADEA jury instruction asked whether "age was one of the reasons" for plaintiff's discharge.  See Umpelby, 69 F.3d at 213   The Umpelby court found the instruction erroneous because "[t]he jury must therefore look for more than whether age was merely 'one reason' for the discharge, but must determine whether age was a substantial factor in the decision and whether it 'tipped the balance' in favor of discharge."  Id. (citation omitted).  Here, the special ADEA instruction used is quite similar to the language endorsed by the Seventh Circuit.  The instruction required that age "made a difference" in the decision to terminate Farley-- substantially similar to the "substantial factor" and "tip the balance" language of Umpelby.

defendant is found liable for the plaintiff's injury, the District Court has a great deal of discretion in deciding the level of damages to be awarded." Ferrill v. Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999) (citing Stallworth v. Shuler, 777 F.2d 1431, 1435 (11th Cir. 1985)); see also Goldstein v. Manhatten Industries, Inc., 758 F.2d 1435, 1447-48 (11th Cir. 1985) (reviewing trial court decision as to whether jury compensatory damages award was excessive for "clear abuse of discretion"). After a trial court has reviewed and remitted a jury award to a specific amount, we accord that decision "a presumption of validity." Ferrill, 168 F.3d at 476 (citing Honda Motor Co. v. Oberg, 512 U.S. 415, 421 (1994)).

Here, the trial court remitted the jury award to an amount authorized by Congressional statute. See 42 U.S.C. §1981a(b)(3)(D). The compensatory award was based on Farley's emotional pain and suffering resulting from Nationwide's discriminatory conduct. At trial, the jury and trial court heard testimony of Farley's emotional pain and suffering from Farley, his wife, and his doctors. We have explained that "[t]he standard of review for awards of compensatory damages for intangible, emotional harms is 'deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.'" Ferrill, 168 F.3d at 476 (quoting Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 937-38 (5th Cir. 1996)). We can discern no reason to substitute our

27

judgment for that of the jury and trial court on a reasonable amount for Farley's emotional pain and suffering. The remitted award was not an abuse of the trial court's discretion.

III.

A.    Retaliation Claim

We review the entry of summary judgment de novo. See Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997) (citing Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 918 (11th Cir.1993)). Summary judgment is appropriate if the record shows that "no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Raney, 120 F.3d at 1196 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A genuine issue of material fact "exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1284-85 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In making this assessment, we review all facts and inferences reasonably drawn from the facts in the light most favorable to the nonmoving party. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998).

28

The trial court granted Nationwide summary judgment on Farley's ADA retaliatory discharge claim. The ADA provides that "'no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA].'" Stewart, 117 F.3d at 1287 (quoting 42 U.S.C. § 12203(a)). We review such claims under the same rubric used for Title VII retaliation claims. See Stewart, 117 F.3d at 1287 (citing McNely, 99 F.3d at 1075-77). To avoid summary judgment, a plaintiff must establish a prima facie case of retaliation. This showing contains three elements: first, the plaintiff engaged in statutorily protected conduct; second, the plaintiff suffered an adverse employment action; and finally, the adverse action was causally related to the protected expression. See Stewart, 117 F.3d at 1287 (citing Goldsmith v. City of Atmore, 996 F.2d. 1155, 1163 (11th Cir. 1993)). Once a prima facie case has been established, the employer has the burden of articulating a legitimate nondiscriminatory reason for the challenged employment decision. See Stewart, 117 F.3d at 1287. The plaintiff then must "demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." Id.

In this case, the trial court granted summary judgment because Farley had failed to show a causal nexus between his termination and his EEOC complaint.

We disagree and conclude that Farley established a prima facie case of retaliation. Moreover, after reviewing the record, we find that Farley demonstrated sufficient evidence from which a jury could conclude that Nationwide's proffered reason for discharge (poor work performance) was a pretext for retaliation. Accordingly, we reverse the magistrate court's grant of summary judgment.

To begin, both sides agree that Farley satisfied the first two elements of a prima facie case; namely, that he engaged in statutorily protected expression and suffered an adverse employment decision. Soon thereafter, Farley filed a discrimination claim with the EEOC on May 19, 1995. Farley was terminated by Nationwide on July 10,1995. The trial court determined, however, that Farley failed to establish a causal nexus between these two events. We disagree. To prove a causal connection, we require a plaintiff only to demonstrate "'that the protected activity and the adverse action were not wholly unrelated.'" Clover v. Total System Services, 176 F.3d 1346, 1354 (11th Cir. 1999) (emphasis added) (quoting Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985)). We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action. See Clover, 176 F.3d at 1354 (citing Goldsmith,

996 F.2d at 1163-64). Here, there is no dispute that Farley's two supervisors, Tom Sutterfield and Hugh Glatts, learned of Farley's EEOC charge shortly after its filing. Sutterfield admitted in his deposition that Farley told him about the charge and that he discussed the matter with Glatts. Moreover, a close temporal proximity existed between Farley's termination and his supervisors' knowledge of the complaint. The charge was made May 19, 1995 and Farley was fired seven weeks later on July 10, 1995. We find this timeframe sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case.

Once a prima facie case has been demonstrated, the defendant must proffer a legitimate nondiscriminatory reason for the adverse employment action. See Stewart, 117 F.3d at 1287. Nationwide asserted that Farley was terminated because of his poor technical performance as a claims adjuster and his failure to complete the "work probation" program satisfactorily. These reasons clearly are legitimate non-discriminatory reasons on their face. Therefore, Farley bore the burden of offering evidence from which a jury could conclude that these reasons were a "pretextual ruse for retaliation." Id.

After thoroughly reviewing the record, we find sufficient evidence of pretext to entitle Farley's retaliation claim to survive summary judgment. We have explained:

31

> [D]isbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination. Therefore, . . . a plaintiff is entitled to survive summary judgment, . . . if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action.

Combs, 106 F.3d at 1529. Here, there is ample evidence to create a genuine issue of fact with respect to Nationwide's proffered reason of poor work performance. Farley introduced evidence, including numerous performance evaluations, of his professional competence and offered testimony about the verbal abuse and disparate work treatment he received from his supervisors as a result of his disability and age. This evidence created a genuine issue of fact as to the credibility of Nationwide's proffered reason. See Hairston, 9 F.3d at 921 (finding that "[t]he burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretext. . . . Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue."). In fact, the trial court already made a similar determination when it denied Nationwide's motion for summary judgment for Farley's age and disability discrimination claims even though Nationwide proffered the very same non-discriminatory reason (Farley's poor work

32

performance).  Because Farley has established a prima facie case of retaliatory discharge and has created a genuine issue of fact as to the credibility of Nationwide's proffered reason for termination, we find sufficient evidence of pretext, and reverse the magistrate court's grant of summary judgment.

B.     Reinstatement versus Front Pay

After trial, the magistrate court awarded Farley equitable relief in the form of one year of front pay.  Farley had asked the court for equitable relief in the form of reinstatement to his former position at Nationwide.  Now, Farley challenges the magistrate court's decision to award front pay in lieu of reinstatement as an abuse of discretion.  In denying Farley's request, the court explained that the "obvious animosity" between Farley and his former Nationwide supervisors made reinstatement unfeasible.  The court noted that while the jury had rejected Nationwide's claims of Farley's substandard performance, it was clear that placing Farley back in so hostile a work environment would be harmful to both parties.  The court also observed that Farley had obtained substantially similar employment at another insurance firm and already had received large damages awards from the jury for Nationwide's discriminatory conduct.

We review the magistrate court's decision to award front pay in lieu of reinstatement for an abuse of discretion. See Verbraeken v. Westinghouse Electric Co., 881 F.2d 1041, 1052 (11th Cir. 1989); Castle v. Sangamo Weston Inc., 837 F.2d 1550, 1563 (11th Cir. 1988). So long as the equitable remedy chosen is consistent with the statutory purposes of the ADA and ADEA, the trial court has "broad discretion" in fashioning relief. See Verbraeken, 881 F.2d at 1052.

Both the ADA and ADEA authorize the trial court to award equitable relief to prevailing plaintiffs. See 42 U.S.C. § 12117(a) (ADA); 29 U.S.C. 626(b) (ADEA). The central purpose of both statutes is to "make the plaintiff 'whole,' to restore the plaintiff to the economic position the plaintiff would have occupied but for the illegal discrimination of the employer." Castle, 837 F.2d at 1561. Previously, we have explained that reinstatement offers the most likely means of making a plaintiff whole by allowing her to continue her career as if the discrimination had not occurred. See Allen v. Autauga County Bd. of Educ., 685 F.2d 1302, 1305-06 (11th Cir. 1982). In Allen, we observed that "when a person loses [] [her] job, it is at best disingenuous to say that money damages can suffice to make that person whole. The psychological benefits of work are intangible, yet they are real and cannot be ignored." Id. at 1306.

34

As a result, we have fashioned a rule of "'presumptive reinstatement' in wrongful discharge cases" for victorious plaintiffs. Williams v. Roberts, 904 F.2d 634, 639 (11th Cir. 1990) (explaining that this rule "follows the notion that money damages will seldom suffice to make whole persons who are unlawfully discriminated against in the employment environment") (citing Darnell v. City of Jasper, 730 F.2d 653, 655 (11th Cir. 1984)); see also Goldstein, 758 F.2d at 1448 (stating that reinstatement is the "preferred remedy for discriminatory discharge" in ADEA cases) (emphasis added); Williams v. City of Valdosta, 689 F.2d 964, 977 (11th Cir. 1982) (holding that "in this circuit, the law is clear that a plaintiff so discriminated against in the employment context is normally entitled to reinstatement and back pay, absent special circumstances warranting the denial of equitable relief"); Allen, 685 F.2d at 1305 (noting that "[m]any other cases that bind us have reached the same conclusion: reinstatement is a basic element of the appropriate remedy in wrongful employee discharge cases and, except in extraordinary cases, is required").

However, reinstatement is not always required as equitable relief. We have recognized that when extenuating circumstances warrant, a trial court may award a plaintiff front pay in lieu of reinstatement. See Castle, 837 F.2d at 1562 (noting that reinstatement may not be "a viable form of relief due to the surrounding

circumstances"). Such circumstances include situations where "discord and antagonism between the parties would render reinstatement <u>ineffective</u> as a make-whole remedy." <u>Goldstein</u>, 758 F.2d at 1449; <u>see also</u> <u>Wilson v. S & L Acquisition Co.</u>, 940 F.2d 1429, 1438 (11th Cir. 1991) (recognizing that "[t]he general rule is that prospective damages are awarded in lieu of reinstatement when it is <u>not feasible</u> to reinstate the employee"); <u>Mt. Haskins v. City of Boaz</u>, 822 F.2d 1014, 1015 (11th Cir. 1987) (noting that front pay "is an appropriate [equitable] remedy when reinstatement is impracticable or inadequate") (citation omitted). Yet we do require that a trial court "carefully articulate" its reasons for awarding front pay in lieu of reinstatement. <u>See</u> <u>Verbraeken</u>, 881 F.2d at 1052 (citing <u>Dickerson v. Deluxe Check Printers, Inc.</u>, 703 F.2d 276, 280 (8th Cir. 1983)).

In this case, the trial court did carefully articulate its reasons for awarding front pay rather than reinstatement. Specifically, the court explained that the antagonism between Farley and his Nationwide supervisors rendered reinstatement "not feasible." After a thorough review of this record, we are satisfied that the trial court did not abuse its discretion in awarding front pay because of the hostility between Farley and his former Nationwide supervisors.

There was sufficient evidence in this record to support the trial court's choice of equitable remedy. This conclusion is particularly warranted given the

wide ambit of deference we accord to trial courts in fashioning equitable relief. Farley suffers from several stress-induced long-term disabilities including post-traumatic stress disorder, alcoholism, and depression. Both Farley and his psychologist testified that his symptoms were heavily influenced by his workplace environment. Farley also testified about the debilitating effects on his physical and mental condition that resulted from the pervasive verbal abuse he endured from his former supervisors. According to Farley, colleagues and supervisors would call him one of the "crazies" and demean his mental condition and job performance. In a particularly egregious incident, one of his supervisors posted a cartoon labeling Farley as "Just Plain Nuts" on the company bulletin board for all Nationwide employees to see. On this record, we find that Farley's hostile work environment, coupled with his stress-induced disabilities, created sufficient special circumstances to support the trial court's award of front pay in lieu of reinstatement.

That said, we emphasize that the presence of some hostility between parties, which is attendant to many lawsuits, should not normally preclude a plaintiff from receiving reinstatement. Defendants found liable of intentional discrimination may not profit from their conduct by preventing former employees unlawfully terminated from returning to work on the grounds that there is hostility between the

parties. See Allen, 685 F.2d at 1306 (observing that "[u]nless we are willing to withhold full relief from all or most successful plaintiffs in discharge cases, and we are not, we cannot allow actual or expected ill-feeling alone to justify nonreinstatement"); see also EEOC v. Century Broadcasting Corp., 957 F.2d 1446, 1462 (7th Cir. 1992) (noting that "if 'hostility common to litigation' would justify a denial of reinstatement, reinstatement would cease to be a remedy except in cases where the defendant felt like reinstating the plaintiff") (citation omitted); Walther, 952 F.2d at 127 (vacating front pay award where judge did not explicate any unusual circumstances of discord but simply concluded that the litigation was "protracted and necessarily vexing"). To deny reinstatement on these grounds is to assist a defendant in obtaining his discriminatory goals. See Jackson v. City of Albuquerque, 890 F.2d 225, 235 (10th Cir. 1989) (overruling denial of reinstatement based on the discriminating employer's hostility for the prevailing plaintiff). But the unusual facts of this case suggest that the trial court did not abuse its discretion in concluding that reinstatement would be ineffective as a make-whole remedy. Accordingly, we affirm the trial court's choice of equitable relief.

C.      Liquidated Damages

The trial court awarded Farley liquidated damages as a result of the jury's finding that Nationwide's discriminatory conduct was "willful." <u>See</u> 29 U.S.C. § 626(b) (ADEA). However, Farley claims that the trial court abused its discretion when it did not include front pay in the liquidated damages award. This claim also is without merit.

The ADEA contains a liquidated damages provision which allows the doubling of all "amounts owing" to a prevailing plaintiff in cases of "willful violation" of its provisions. 29 U.S.C. § 626(b). Farley contends that his frontpay award should be included in this doubled amount along with his backpay award. The trial court doubled Farley's backpay award but not his frontpay award.

We find that the trial court properly did not include frontpay in the liquidated damages award. All eight federal circuits that have interpreted the "amounts owing" provision in the context of front pay recovery under ADEA have concluded that front pay should not be included in liquidated damages awards. <u>See Olitsky v. Spencer Gifts, Inc.</u>, 964 F.2d 1471, 1479 (5th Cir. 1992); <u>Wheeler v. McKinley Enters.</u>, 937 F.2d 1158, 1163 n.2 (6th Cir. 1991); <u>Powers v. Grinnell Corp.</u>, 915 F.2d 34, 35 (1st Cir. 1990); <u>Graefenhain v. Pabst Brewing Co.</u>, 870 F.2d 1198, 1210 (7th Cir. 1989); <u>Cooper v. Asplundh Tree Expert Co.</u>, 836 F.2d 1544, 1556-57 (10th Cir. 1988); <u>Blum v. Witco Chemical Corp.</u>, 829 F.2d 367,

39

382-83 (3rd Cir. 1987); <u>Dominic v. Consolidated Edison Co.</u>, 822 F.2d 1249, 1258-59 (2nd Cir. 1987); <u>Cassino v. Reichold Chems., Inc.</u>, 817 F.2d 1338, 1348 (9th Cir. 1987).  Our sister circuits have found that while liquidated damages are intended to be punitive in nature, the express terms of the ADEA limit the calculation of liquidated damages to double the amount of lost pecuniary wages. <u>See, e.g.</u>, <u>Blum</u>, 829 F.2d at 382-83.   Front pay, however, is equitable rather than compensatory relief.  These circuits therefore have limited liquidated damages to double the amount of full backpay and lost fringe benefits.  <u>See</u> <u>id.</u>   Farley has not persuaded us that these circuits have interpreted the statute incorrectly.  We therefore find no error in the trial court's decision.


D.    <u>Attorney Fees</u>

Finally, Farley challenges the magistrate  court's denial of post-verdict attorney's fees totaling around $11,000.  Farley had sought attorney's fees in the amount of $63, 730.  The  court awarded Farley $54,670 in attorney's fees. Again, we review the trial court decision for an abuse of discretion.  <u>See</u> <u>Waters v. International Precious Metals Corp.</u>, 190 F.3d 1291, 1293 (11th Cir. 1999).   The trial court did not abuse its discretion in awarding attorney's fees.  The court properly considered the reasonable attorney fee guidelines the former Fifth circuit

outlined in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), which we have subsequently adopted for reasonable fee determinations for prevailing parties.[8]  See <u>Florida Suncoast Villas, Inc. v. United States</u>, 776 F.2d 974, 975 (11th Cir. 1985); <u>Jones v. Central Soya Co.</u>, 748 F.2d 586, 588 (11th Cir. 1985).  Farley has failed to make any showing that the fee award was an abuse of discretion.  We therefore affirm the award.

IV.

---

[8]These factors include:

> 1) the time and labor required;
> 2) the novelty and difficulty of the questions;
> 3) the skill requisite to perform the legal service properly;
> 4) the preclusion of other employment by the attorney due to the acceptance of the case;
> 5) the customary fee;
> 6) whether the fee is fixed or contingent;
> 7) time limitations imposed by the client or the circumstances;
> 8) the amount involved and the results obtained;
> 9) the experience, reputation and ability of the attorneys;
> 10) the "undesirability" of the case;
> 11) the nature and length of the professional relationship with the client;  and
> 12) awards in similar cases.

<u>Jones</u>, 748 F.2d at 588.

In sum, we find that the magistrate court did not plainly err in its jury instructions or verdict form, nor abuse its discretion in remitting Farley's compensatory damages to the maximum allowed by statute. We also conclude that the magistrate court did not abuse its discretion in awarding front pay in lieu of reinstatement, precluding frontpay from its liquidated damages award, or awarding attorney's fees to the prevailing party. However, we conclude that the magistrate court did err in granting summary judgment on Plaintiff's retaliation claims. Accordingly, we affirm in part, and reverse in part.

AFFIRMED IN PART, REVERSED IN PART.