[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 16, 2005
THOMAS K. KAHN
CLERK**

No. 04-14031

D. C. Docket No. 03-00055-CV-J-25-TEM

TERRY ROBERTS,

Plaintiff-Appellant
Cross-Appellee,

versus

RAYONIER, INC.,
A foreign corporation,

Defendant-Appellee
Cross-Appellant.

———————————————

Appeals from the United States District Court
for the Southern District of Florida

———————————————

**(June 16, 2005)**

Before ANDERSON, HULL and GIBSON[*], Circuit Judges.

PER CURIAM:

---

[*] Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Terry Roberts, formerly labor relations counsel for Rayonier, Inc., sued Rayonier under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* contending that he was discriminated against on the basis of a disability (alcoholism) and/or because he was perceived as disabled. In addition, Roberts claimed that he was fired in retaliation for requesting an accommodation for his alcoholism; and that he was fired in retaliation for opposing the assessment exam from which he requested to be excused as an accommodation. He asserts that the assessment exam was an impermissible medical test under the ADA, 42 U.S.C. § 12112(d). Roberts also challenged his termination under theories of misrepresentation and estoppel. The district court rejected the estoppel and misrepresentation claims for failure to state a claim and granted summary judgment for Rayonier on all remaining counts. Roberts appeals dismissal of all of his ADA claims, as well as his estoppel and misrepresentation claims.[2] Rayonier cross-appeals the district court's denial of attorney's fees. For the reasons stated below, we affirm the district court's decision in part, and vacate and remand in part.

I. FACTUAL AND PROCEDURAL BACKGROUND

---

[2] Roberts also brought disability discrimination, retaliation and impermissible medical test claims under the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq. (1997). On appeal, Roberts does not discuss any of his claims under the Florida Civil Rights Act and, for this reason, has waived any challenge to the district court's dismissal of these claims.

2

Viewed in the light most favorable to Roberts, the relevant facts are as follows. Roberts began working for Rayonier in 1983. Ten years later, Roberts was promoted to "Director, Labor Relations and Counsel." Roberts was required to have a law degree and maintain an attorney-client relationship with Rayonier. Although Roberts received "Excellent" ratings from 1993-1999, Roberts' supervisor, Rayonier Vice President John O'Grady, counseled Roberts about alcohol use in late 1996-early 1997. In 2000, Rayonier received reports that Roberts was arriving late to work and that Roberts had alcohol on his breath while at work. His evaluation for 2000 was reduced to "Acceptable." Roberts received a letter from O'Grady in March 2000, discussing his alcohol use and presenting him with the option of resigning or signing a "last chance agreement." The letter documented Roberts' problems with alcohol and the recent reports that he was sometimes late for meetings in the morning and sometimes had alcohol on his breath, which created a credibility problem in the minds of those at the meeting. The letter also mentioned an occasional report of a perceived difficulty in focusing. Finally, it communicated the fact that a continuation of such behavior could not be tolerated. Roberts signed the last chance agreement in which he agreed to seek professional counseling for his alcohol problem and "acknowledged that further instances of alcohol related misconduct would result in his termination." Roberts did seek such professional help, and no further alcohol-related incidents occurred.

Rayonier requires its executives to take a psychological assessment upon entering the company and also for promotion purposes. Roberts did not take the assessment when he joined the Company, nor when he was subsequently promoted. In late 2000 or early 2001, O'Grady told Roberts that he had learned that Roberts had never taken the test and that Roberts would have to do so. O'Grady allegedly told Roberts, "boy, am I going to have fun with you. I'm going to have you scheduled and find out what makes you tick."

Roberts asked O'Grady on three occasions to excuse him from the assessment on grounds that the assessment was "intrusive, not cost justified, not confidential, and not predictive of success." O'Grady continued to insist that Roberts take the test. On May 18, 2001, Roberts gave O'Grady two letters. The first was from Roberts' physician, Dr. Virzi. Virzi was treating Roberts for alcoholism (consistent with the last chance agreement) and for depression. After recounting the Roberts' version of his encounters with O'Grady and Roberts' view that "such assessments were intrusive, not accurate predictors of actual job performance, and were unwarranted given the fact that the requirement had not been made in contemplation of any change in his employment status," the letter stated:

> I am familiar with many of the assessment instruments and the
> process itself, and I agree with some of his reservations about the
> process. Mr. Roberts' concerns, however valid they may be, are less

concerning to me than the employers [sic] stated motivation and the assessment itself. Even in an ideal setting there is a natural fear of this process, and to have such an assessment conducted in the context it was conveyed is incomprehensible to me. I would have serious questions about the validity of any assessment performed under these circumstances.

This "Assessment" is not advised and, in my judgement, adverse [sic] to my Physician-Patient relationship with Mr. Roberts.

The other letter was from attorney Archibald Thomas. Thomas's letter stated that Thomas was representing Roberts, described the dispute generally, and then continued as follows:

As you probably know, the [Americans with Disabilities] Act protects against discrimination against a qualified individual with a disability, requires reasonable accommodation, and specifically prohibits retaliation or coercion against one who opposes unlawful acts, or participates in any manner in any proceeding, and prohibits coercion, intimidation, or interference because of that persons [sic] exercise of rights guaranteed by the act.

The attached letter from Dr. Virzi is self explanatory and we hope that you can accommodate this reasonable request by canceling any assessment scheduled for Mr. Roberts.

O'Grady reacted angrily to the letters and told Roberts that he felt betrayed, that Roberts was "underhanded," "disloyal," had "picked the wrong fight," and could quit if he did not want to take the assessment. On approximately May 23, 2001, O'Grady requested that the psychologist who administers the assessment for Rayonier, Dr. Crisera, speak with Dr. Virzi. Dr. Crisera did so and wrote O'Grady informing him that the assessment should be postponed. The same day, Rayonier's

5

outside counsel, Guy Farmer, told O'Grady that he had spoken with Roberts' attorney, Archibald Thomas. During the conversation between Farmer and O'Grady and subsequently in a letter, Farmer stated that "[m]y conversation with Thomas also touched on the fact that Terry Roberts having employed counsel had eroded your confidence in him. Archie said that it should not do that and mentioned that he knew Terry somewhat in that he had from time to time consulted with Terry about problems with employees." It is undisputed that Thomas and his firm (Law Offices of Archibald J. Thomas) have represented other plaintiffs in actions against Rayonier, and it appears that Thomas had at least one matter pending at the time Roberts retained Thomas.

On approximately May 24, Rayonier executives met with Roberts. At that meeting, Dan Sassi, Director of Human Resources, allegedly told Roberts, "Thomas says that you and he have discussed Rayonier business in the past on cases he is not involved in. Tell me about that." Roberts denied having had such conversations with Thomas. Sassi told Roberts that the assessment was postponed but would soon be rescheduled. Roberts left for a scheduled vacation the next day and was terminated on June 4, the day he was scheduled to return to work.

Roberts claims that he had never met Thomas in person prior to retaining him for the purpose of getting Rayonier to grant his requested accommodation and that he had spoken with him on the phone only once, when they amicably resolved

6

an issue involving a client of Thomas's who worked as an hourly employee at a Rayonier pulp facility.

Rayonier's June 4 termination letter to Roberts states:

This termination for cause is based on the poor judgment you exercised in your recent efforts to question the requirement by the company that you attend a routine assessment as an executive of a company and a lack of trust that the company has in your ability to represent it in confidential employee relations matters as a result of your actions.

In subsequent proceedings before the Unemployment Compensation Commission, Rayonier's representative wrote that Roberts "was discharged for misconduct. The claimant was a labor lawyer, felt he did not need to follow company policy, so he sought outside legal advice and brought in a letter from an outside lawyer regarding company business [sic]. Since he was the attorney representing the employer, he should not have seeked [sic] outside counciling [sic], regarding company related business issues."

According to Robert's successor, Ken Demarko, O'Grady told Demarko that Roberts was fired because Roberts "refused to take the assessment, and . . . went out and hired outside counsel to write a letter for him basically saying that he doesn't have to take that, and the counsel he chose was a counsel who was a 'plaintiff's attorney' against Rayonier."

## II. DISCUSSION

### A. The ADA Discrimination Claim

7

42 U.S.C. § 12102(2)(A) defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual". In <u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>, the Supreme Court wrote that "[m]erely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." 534 U.S. 184, 195, 122 S.Ct. 681, 690 (2002). "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." <u>Sutton v. United States</u>, 527 U.S. 471, 491, 119 S.Ct. 2139, 2151 (1999). <u>See</u> 29 CFR § 1630.2(j)(3) (2001) ("With respect to the major life activity of working . . . [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.")

Although this circuit has not analyzed an alcohol-related ADA claim in depth, it is clear in the instant case that Roberts has to prove that his condition is one that substantially limits one or more major life activities. Because the major life activity identified by Roberts is work, he is required to prove that he is

8

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.[2]

We have stressed that "substantially limits" means "prevents or severely restricts" rather than requiring only a "diminished activity tolerance", Rossbach v. City of Miami, 373 F.3d 1354, 1358 (11th Cir. 2004); Hilburn v. Murata Electric, 181 F.3d 1220, 1228 (11th Cir. 1999). See Toyota, 122 S.Ct. at 691. The Supreme Court has also stressed the difference between being severely restricted with regards to a particular job and the ADA's more stringent requirement that one be "unable to work in a broad class of jobs." Sutton, 119 S.Ct. at 2151. Our decision in Witter v. Delta Air Lines, Inc., 138 F.3d 1366 (11th Cir. 1998) elaborates upon this distinction. In that case we held that a pilot whose psychological problems made him unfit to pilot aircraft was not limited in a "class of jobs" because there were "non-piloting jobs in the Atlanta area which utilize 'similar training, knowledge, skills or abilities . . . [including] pilot ground trainer, flight simulator trainer, flight instructor, aeronautical school instructor . . . [and] executive,

---

[2]      Although Roberts at times seems to suggest that alcoholism is a "per se" disability, he stipulated in the pretrial order in this case that "[t]o establish that plaintiff's ... 'alcoholism' was a disability, plaintiff must prove that these alleged conditions constituted a physical or mental impairment that substantially limited one or more major life activities, that Rayonier perceived him as having such an impairment, or that he had a record of such an impairment."

management and administrative positions in flight operations for airlines, and being a consultant for an aircraft manufacturer." Id. at 1370.

Roberts contends that he is limited in the major life activity of working, because alcohol "affected his performance," made him "late for meetings" and created "credibility problems" and "perception problems with the union" due to his "having alcohol on his breath." As evidence of alcoholism's impact on his ability to work, Roberts points to the conversations he had with O'Grady in 1996 and 1997 and to reports that he arrived to work late and "unfocused." Roberts also points to O'Grady's suggestion on April 6, 2000, that Roberts "resign for personal reasons" and O'Grady's insistence upon the last chance agreement. Finally, Roberts notes that on August 8, 2000, his performance rating was downgraded from "Excellent"to "Acceptable." Id. at 35-36.

This evidence falls well short of establishing a disability under § 12102(2)(A). We doubt that Roberts' assertions about arriving late, having alcohol on his breath, etc. create an issue of fact as to whether he is substantially limited in the ability to perform either a "class of jobs or a broad range of jobs in various classes." Toyota, 122 S.Ct. at 693. See Rossbach, 371 F.3d at 1354; Witter, 183 F.3d at 1369-70; Burch v. Coca Cola, Inc., 119 F.3d 305, 314 (5th Cir. 1997). Moreover, while that description may have fit Roberts in March 2000, the record

indicates that it no longer fit him during the relevant time frame, approximately a year later. Roberts' own work history also indicates that he was not disabled: he held his job with Rayonier for almost 18 years, earned salary increases every year and, notwithstanding the events leading to the last chance agreement, received an "acceptable" rating, a 3.1% raise and a $35,000 bonus in his final year on the job. These same facts prevent Roberts from showing any 'record of' any such limitation.

We also reject Roberts' assertion that there is a material factual dispute as to whether Rayonier regarded him as disabled. § 12102(2)(C). We reject Roberts' argument that Rayonier's requirement in March 2000 that he sign the last chance agreement is strong evidence that Rayonier regarded him as disabled. To the contrary, the evidence rebuts any such perception on Rayonier's part. Far from treating him as unable to perform his job, or severely restricted in his job, Rayonier expressly allowed Roberts to continue. Roberts sought professional help, continued to perform his job with no further alcohol-related incidents, and even received a substantial raise and bonus during that ensuing year. Thus, Roberts has failed to establish that Rayonier regarded him as severely restricted in or unable to satisfactorily perform his own job, and he has offered no evidence at all that Rayonier regarded him as disabled to do a broad range of jobs. See Sutton, 119 S.Ct. 2139, 2149-51 (1999) (holding that proof of regarded as disabled requires

11

proof that the covered entity mistakenly believes plaintiff has an impairment that substantially limits one or more major life activities, which in the context of work means a broad class of jobs).

Thus, we conclude that Roberts has failed to create a genuine issue of fact, either that he had a disability, or that he was regarded as having one, as those terms are contemplated in the ADA. Accordingly, we affirm the judgment of the district court on Roberts' ADA discrimination claims.

B. The Accomodation Retaliation Claim

Roberts also claims that he was terminated in retaliation for seeking an accommodation for his alcoholism. Specifically, Roberts sought an exemption from Rayonier's testing requirement.

"It is well established in this circuit that to successfully allege a prima facie retaliation claim under . . . the ADA, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). "We review [ADA retaliation] claims under the same rubric used for Title VII retaliation claims." Farley v. Nationwide Mutual Insurance Company, 197 F.3d 1322, 1336

(11th Cir. 1999); Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997).

To prove the necessary element of protected activity, Roberts is not required to prove that he was seeking an accommodation for an actual disability covered by the statute.  It is sufficient if he establishes that he had a reasonable belief that he was disabled or regarded as disabled and thus entitled to an accommodation.  Our decision in Little v. United Technologies, 103 F.3d 956 (11th Cir. 1997), described such reasonable belief as follows:

> A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.  It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

Id., at 960 (emphasis in original).  See Weeks, 291 F.3d at 1312 (employing the Little reasonable belief analysis in the ADA retaliation context.)

"The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law."  Clover v. Total System Services, Inc., 176 F.3d 1346, 1351 (11th Cir. 1999); Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1388 n.2 (11th Cir. 1998).  Where "reasonable minds could disagree on" the reasonableness

of a plaintiff's belief, the issue is "an inappropriate candidate for judgment as a matter of law." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1187 (11th Cir. 2001).

"To prove a causal connection, we require a plaintiff only to demonstrate 'that the protected activity and the adverse action were not wholly unrelated.'" Farley, 197 F.3d at 1337 (quoting Clover, 176 F.3d at 1354)(emphasis in original). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence." Clover, 176 F.3d at 1354, quoting Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir.1993) (internal citations omitted). "We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse employment action." Farley, 197 F.3d at 1337.

Once a prima facie case has been established, the employer has the burden of articulating a legitimate nondiscriminatory reason for the challenged employment decision. The plaintiff then must demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse

14

designed to mask retaliation.  Farley, 197 F.3d at 1336.  "In an employment . . .

retaliation case, even if the plaintiff provides evidence that the defendant, in

making an adverse employment decision, was motivated in part by an

impermissible consideration, the defendant can prevail if it can prove by a

preponderance of the evidence that it would have made the same decision even in

the absence of the discriminatory consideration."  Pulliam v. Tallapoosa County

Jail, 185 F.3d 1182, 1184 (11th Cir. 1999).[3]

The district court rejected Roberts' retaliation claim because it did not view

Ken Demarko and Roberts as similarly situated.  The court also found the prima

facie case lacking because the differences between Rayonier's treatment of the two

men were "de minimus".  In addition, the district court ruled against Roberts

because it concluded that Rayonier had carried its burden of proof  on its mixed

motive defense, i.e. that Rayonier would in any event have terminated Roberts

because it honestly believed that Roberts had previously disclosed confidential

information to Thomas regarding Rayonier's interactions with other employees.

---

[3]  In his reply brief, Roberts argues for the first time that the case should not be analyzed under McDonnell Douglas because the evidence of retaliation is direct evidence.  Rayonier filed a motion to strike this portion of Roberts' reply brief.  We grant Rayonier's motion.  We will not entertain Roberts' direct evidence argument for three reasons:  (1) Roberts did not raise the argument below or in his principal brief; (2) Roberts stipulated that this was an indirect evidence case in the pre-trial order; and (3) the proper resolution of the case under a direct evidence framework is not "beyond dispute".  Polo Ralph Lauren L.P. v. Tropical Shippers & Const. Co., 215 F.3d 1217, 1224 (11th Cir. 2000).

We disagree with the district court's analysis. As should be clear from our discussion of the elements of a prima facie retaliation claim, there is no requirement that plaintiff point to a similarly situated employee. All that is required is that Roberts show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Weeks, 291 F.3d at 1311 (11th Cir. 2002). With respect to the first prong, Rayonier has conceded that Roberts was entitled to request accommodation under the ADA.[4] The second prong is undisputed. Roberts easily meets the third prong of the prima facie test because of the close temporal relationship between Roberts' request for accommodation and Rayonier's decision to terminate him, and because Rayonier itself stated in its termination letter that Roberts' request for an exemption from the test was one of the reasons for his discharge. It is clear, in other words, that his discharge and his request for an accommodation were not "wholly unrelated". Farley, 197 F.3d at 1337.

---

[4] As already discussed, Roberts is required to show the objective and subjective reasonableness of his belief that he was entitled to statutory protection. Because Rayonier has conceded both below and on appeal that Roberts was entitled to request accommodation, we do not address the issue. Rayonier does not concede, however, that Roberts exercised his right to request accommodation in a reasonable way. As we discuss below, we decline to reach that issue, preferring that the district court make the determination in the first instance.

The closer question is whether or not Rayonier "would have made the same decision even in the absence of the discriminatory consideration." Pulliam, 185 F.3d 1182, 1184 (1999). As discussed above, Rayonier claims that as a result of Farmer's conversation with Thomas about Roberts' desire not to take the assessment, Rayonier became aware of what it honestly believed were previous, independent breaches of confidentiality by Roberts. In particular, Rayonier claims that Thomas told Farmer that Thomas "had from time to time consulted with [Roberts] about problems with employees" and that this comment formed the basis of an honest belief that Roberts had previously breached his duty of confidentiality. Rayonier claims it would have fired Roberts for this reason even in the absence of any discriminatory reason. We conclude that there is sufficient evidence in Roberts' favor on this point to render summary judgment inappropriate.

The first piece of relevant evidence is the June 4 termination letter, which states:

> This termination for cause is based on the poor judgment you exercised in your recent efforts to question the requirement by the company that you attend a routine assessment as an executive of a company and a lack of trust that the company has in your ability to represent it in confidential employee relations matters as a result of your actions.

Although the last line of the letter could possibly refer to disclosure to Thomas of confidential information regarding Rayonier's "problems with

17

employees," a reasonable juror could read the letter to imply that Rayonier terminated Roberts based on Roberts' decision to resist the test, and to hire an attorney, and not because it believed that Roberts had previously made any improper disclosures regarding other employment cases.

Rayonier's honest belief that disclosure took place is also undercut by Ken Demarko's testimony. Demarko testified that he was told by O'Grady that Roberts was fired because Roberts "refused to take the assessment, and . . . went out and hired outside counsel to write a letter for him basically saying that he doesn't have to take that, and the counsel he chose was a counsel who was a 'plaintiff's attorney' against Rayonier." The previous disclosure of confidential information regarding other employees' cases is not mentioned.

Similarly, Rayonier's statements during Roberts' unemployment benefits proceeding emphasize Roberts' resistance to the assessment and his decision to hire Thomas, rather than disclosure of confidential information regarding other cases. (**"The claimant . . . felt he did not need to follow company policy, so he sought outside legal advice and brought in a letter from an outside lawyer regarding company business [sic]. Since he was the attorney representing the employer, he should not have seeked [sic] outside counciling [sic], regarding company related business issues."**)

Finally, a reasonable juror could infer that Rayonier was not motivated by an honest belief that such disclosures took place based upon the lack of evidence of significant investigation. In this regard we note that Farmer's letter states only that "Archie . . . mentioned that he knew Terry somewhat in that he had from time to time consulted with Terry about problems with employees." Rayonier has not pointed to any evidence indicating that it ever sought to determine which employees' problems were discussed or the substance of the information disclosed. A reasonable juror could infer that Thomas was referring to entirely appropriate consultations between Roberts and Thomas relating to Rayonier employees whom Thomas was representing. A reasonable juror could infer pretext from the combination of the severity of Rayonier's action (termination), the vagueness of Farmer's original statement and Rayonier's apparent lack of follow-up.[5]

Viewed as a whole, this evidence creates a material factual dispute on the issue of whether or not Rayonier would have fired Roberts for legitimate reasons. Rayonier has failed to carry its burden on summary judgment regarding the mixed

---

[5] We recognize that the evidence would provide some support for another argument – that Rayonier would have fired Roberts anyway because he consulted an attorney who had recently filed lawsuits against the company and had one such case still pending. Rayonier might believe that such an attorney might reasonably be expected to receive information in representing Roberts which would be damaging to the company in other lawsuits that the lawyer might bring. Assuming that Rayonier argues this, in addition to the disclosure of confidential information argument, as a basis for its legitimate discharge, we decline to address the issue. The issue is related to the one addressed immediately below, which we also decline to address. We prefer for the issue to be addressed in the first instance by the district court.

motive defense. Summary judgment on this basis was in error, and must be vacated.

As an alternative basis for affirming the judgment of the district court with respect to this accommodation retaliation claim, Rayonier argues that the manner in which Roberts exercised his right to oppose taking the medical test was unreasonable and therefore not statutorily protected activity. In this regard, Rayonier argues that Roberts never clearly communicated to Rayonier that his request was in the nature of an ADA accommodation, nor did he clearly apprise Rayonier of his opinion that the test as applied to him would violate the ADA. Most particularly, Rayonier argues that Roberts' selection of Thomas as his attorney was unreasonable in light of the fact that Thomas and/or others in his office were plaintiffs' lawyers who had recently brought employment discrimination cases against Rayonier, and actually had one matter still pending. Rayonier supports its argument by pointing to numerous cases in which courts have found that unreasonable exercise of actions that would otherwise be protected under Title VII is unprotected. See Rollins v. State of Fla. Dept of Law Enforcement, 868 F.2d 397 (11th Cir. 1981); Rosser v. Laborers' Intern. Union of N.America, 616 F.2d 221 (5th Cir. 1980) (holding that although opposition to unlawful employment practices is protected, such protection is not absolute); Jeffries v. Harris County Community Assoc., 615 F.2d 1025 (5th Cir. 1980) (accord,

and applying a balancing test); see also Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364 (5th Cir. 1998) (involving in-house counsel); Jones v. Flagship Int'l, 793 F.3d 714 (5th Cir. 1986) (involving in-house counsel). Rayonier suggests that as an in-house attorney having duties of loyalty and confidentiality to Rayonier, Roberts was unreasonable in hiring Thomas, an attorney who had recently sued the company and who was likely to use in other cases against the company any confidential information which Roberts might appropriately reveal to him. At this stage of the case, we decline to address the issue because the district court has not addressed the issue; because developments in the case may make it unnecessary to address the issue; and because, if the issue is to be addressed, the district court may determine that the inquiry would be facilitated by additional development of the relevant facts.

C. The Medical Test Retaliation Claim

Roberts also argues that his employment was terminated in retaliation for his opposition to Rayonier's request that he submit to an impermissible "medical

examination" in violation of the ADA.[6]  The relevant provision is §

12112(d)(4)(A), which states:

> A covered entity shall not require a medical examination and shall
> not make inquiries of an employee as to whether such employee is an
> individual with a disability or as to the nature or severity of the
> disability, unless such examination or inquiry is shown to be
> job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A).

The district court did not discuss this claim separately from the accommodation

retaliation claim.  Indeed, the district court only addressed the claim implicitly in

its conclusory statement that "this Court need not address Plaintiff's motion for

partial summary judgment since the above conclusions were reached."

In light of our reversal of the district court's grant of summary judgment on

the accommodation retaliation claim, and specifically our ruling on Rayonier's

mixed motive defense, we vacate the grant of summary judgment in favor of

---

[6]  Roberts suggests rather vaguely on appeal that his medical test claim is somewhat broader, encompassing not only the claim that he was fired in retaliation for opposing the medical test, but also a simple challenge to the validity of the test.  For example, he suggested at oral argument that he incurred pain and suffering damages, wholly apart from any damages resulting from the termination, because of the requirement that he submit to the medical test. Although we have some doubt as to whether he fairly presented such a claim to the district court, we leave the matter to the district on remand to determine whether Roberts preserved any such claim, and whether the court should exercise its discretion to entertain same.

Rayonier on the medical test retaliation claim and remand the claim for further proceedings consistent with this opinion.[7]

D. Estoppel and Misrepresentation

The district court dismissed Roberts' estoppel and misrepresentation claims for failure to state a claim. Roberts bases these claims upon Rayonier's Code of Conduct, in which Rayonier allegedly "promises" that it will "observe the law both in letter and spirit" and will "not discriminate against employees because of disabilities."

The district court rejected Roberts' estoppel and misrepresentation claims on grounds that "it is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract." The court also stated that "[t]his Court seriously doubts that a statement to obey the law induced Plaintiff to do anything."

Although Roberts' claims should fail, the district court's suggestion that the existence of an enforceable contract is pivotal to the viability of a promissory

---

[7] This case presents an issue of first impression in our circuit as to whether a non-disabled person can bring a medical test retaliation claim. We expressly decline to decide that issue and leave it to the district court in the first instance.

estoppel claim is misplaced.  Indeed, the purpose of the doctrine of promissory estoppel is to provide a remedy in the absence of an enforceable contract.  See, e.g. Williston on Contracts, Chapter 8 ("Promises without Mutual Assent or Consideration), Sec. 4;  Robert A. Brazener, Annotation, Promissory Estoppel As Basis For Avoidance Of Statute Of Frauds, 56 A.L.R.3d 1037 § 2 (1974); Buckholz v. F.D.I.C., 129 F.3d 868 (6th Cir. 1997).  Rather, Roberts' estoppel and misrepresentation claims are without merit because each doctrine requires the plaintiff to take action in reasonable reliance.[8]  The general statement in a policy manual of an intent to follow the law does not create any new, specific expectations based upon which it would be reasonable for an employee to change positions.  Put differently, we hold that, as a matter of law, Roberts would not have been justified

---

[8]     Promissory estoppel is:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

W.R. Grace and Co. v. Geodata Services, Inc., 547 So 2d 919, 924 (Fla. 1989) (quoting Restatement (Second) of Contracts § 90 (1979)).

Roberts "misrepresentation" is either a claim for fraudulent misrepresentation or negligent misrepresentation.  Under Florida law, the elements of fraudulent misrepresentation are: "(1) a false statement of a material fact; (2) known by the defendant to be false; (3) made to induce the plaintiff to act in reliance; (4) the plaintiffs acts in reliance upon the representations; and (5) that proximately caused his injury."  Butterworth v. Quick & Reilly, Inc., 998 F.Supp. 1404, 1410 (M.D. Fla. 1998) (citations omitted).   "The elements for negligent misrepresentation are those for a fraud claim, except that it does not require the element of knowledge to establish scienter."  Id. at 1411  (citations omitted).  Both possible misrepresentation claims require reasonable reliance.

in changing his position on the basis of general language committing Rayonier to do that which it was already legally committed to do. Accordingly, we affirm the district court with respect to these claims.

E. Rayonier's Cross Appeal for Attorney's Fees

Rayonier's claim for attorney's fees is premature in light of our holding with respect to Roberts' medical test retaliation claim. Moreover, we would in any event be bound by the Supreme Court's decision in Delta Airlines v. August, 450 U.S. 346, 349-50, 101 S.Ct. 1146, 1148-49 (1981). Accordingly, we decline to disturb the district court's ruling in this regard.

III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed with respect to Roberts' ADA discrimination claims and his estoppel and misrepresentation claims. However, the judgment is vacated with respect to Roberts' accommodation retaliation claim and with respect to his medical test retaliation claim. Rayonier's claim for attorney's fees is premature.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.